THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
WAYNE MACK CALLAWAY, Defendant-Appellee.

Fifth District   No. 5—86—0725

Opinion filed April 18, 1988.

John Coady, State's Attorney, of Taylorville (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE LEWIS delivered the opinion of the court:
Defendant, Wayne Mack Callaway III, was charged by information with the offense of burglary on May 7, 1986. Subsequently, a motion to quash arrest and to suppress evidence was filed by defendant and a hearing on this motion was held on June 26, 1986. A written order denying defendant's motion to suppress evidence and to quash arrest was entered on July 17, 1986. Defendant filed a motion to reconsider the order denying defendant's motion to suppress but the circuit court again denied defendant's motion. After a stipulated bench trial, the circuit court found defendant guilty of the offense of burglary and sentenced defendant to four years' probation and to 89 days' incarceration in the county jail with credit for time served. Defendant filed a post-trial motion in which he alleged that the circuit court erroneously

denied his motion to suppress evidence. On September 22, 1986, defendant's post-trial motion was considered. The judge presiding at the hearing on the post-trial motion was not the judge who presided at the hearing on the motion to suppress. After due consideration, on September 26, 1986, the circuit court held that evidence obtained as a result of an invalid search of defendant's home was erroneously admitted at defendant's bench trial. Because the evidence was improperly admitted, defendant was granted a new trial. From this order granting defendant a new trial, the State appeals.

The issue raised by the State on appeal is that the circuit court erred when it determined that a joint occupant's voluntary consent to a search, subsequent to a defendant's refusal to consent, is not a valid consent and renders the search invalid. Defendant, on appeal, also contends that the joint occupant's consent was not voluntary. The issue of whether a third party's consent coming after a defendant's prior refusal to consent to a search is vitiated by the refusal is one of first impression in Illinois.

The following facts were adduced at the hearing on defendant's motion to suppress. Officer Rohn Burke, a police officer for the City of Taylorville, testified that on May 7, 1986, at approximately 3 a.m., he investigated a burglary at Turner's Liquor Store. As a result of his investigation, he arrested three individuals. He was advised later that morning by Officer Randy Pettus that a codefendant had stated that defendant was involved in the burglary. On the basis of this information, Officer Burke, accompanied by Officers Smith and Vatthauer, went to defendant's home.

When Officer Burke arrived at defendant's home, defendant's father, Wayne Mack Callaway, Jr., was outside on the porch of his residence. Officer Burke inquired of Mr. Callaway whether defendant was at home. Mr. Callaway informed him that defendant was inside in the living room asleep on the couch but that defendant had only returned home approximately an hour to an hour and a half earlier. After asking and receiving permission from defendant's father to enter the house so that he might speak with defendant, Officer Burke went inside.

Officer Burke approached defendant, asked him a few questions and then placed defendant under arrest for the burglary of Turner's Liquor Store. Officer Burke did not ask defendant if a search of the premises might be conducted but he was aware that defendant had stated that a search warrant was needed before a search was done. However, before Officer Burke transported defendant to the police station, Kenneth Griffiths, defendant's stepbrother, orally consented

to a search, but a search of the residence was not made at that time. Defendant was present when Kenneth gave his consent to search.

Next, Officer Burke, accompanied by Officer Smith, conveyed defendant to the police station while Officer Vatthauer remained inside the house so that evidence could not be removed during Officer Burke's and Officer Smith's absence. Approximately 20 minutes later, Officer Burke and Officer Smith returned to defendant's home with a blank consent form. Kenneth Griffiths signed the consent form and the premises were searched. Officer Burke stated that he did not obtain permission to search from defendant's mother or father prior to this consent. As a result of the search, Officer Smith found cash in a pair of boots sitting underneath a hall tree located on the built-in back porch and Officer Burke found rolls of coins inside a Weber barbecue grill in the backyard.

Officer Smith's testimony corroborated Officer Burke's testimony. Additionally, he testified that prior to taking defendant to the police station, defendant was permitted to go into his bedroom to get dressed and Officer Smith accompanied defendant into the bedroom where Kevin Griffiths was sleeping. Defendant began to open a dresser drawer but Officer Smith stopped him and searched the drawer for weapons. When Officer Smith did this, defendant stated that a search warrant was required before a search could be conducted. Kevin Griffiths, who had awakened upon defendant's and the officer's entrance into the bedroom, reiterated defendant's statement that a search warrant was necessary. Officer Smith confirmed that Officer Burke asked Kenneth Griffiths if he would permit them to search the premises and Kenneth agreed to allow a search. Officer Smith was present when the other officers returned to defendant's home with a written consent form, and he witnessed Kenneth's signing of the form. He stated that the search was not conducted until after Kenneth signed the consent form.

Officer Vatthauer's testimony coincided with the testimony of Officer Burke and Officer Smith. He confirmed that he remained at defendant's home when the other two officers removed defendant to the police station. Further, he stated that both defendant and Kevin Griffiths informed the officers that a search warrant was needed before a search was conducted. He recalled that Kenneth Griffiths gave them oral permission to search, that Kenneth signed a written consent form at about 7 a.m., and that no search occurred until the written consent form was signed.

Wayne Mack Callaway, Jr., defendant's father, testified that on May 7, 1986, he lived at 601 West Adams Street with his wife, the

defendant, and his two stepsons. He stated that on May 7, 1986, at about 6:30 a.m., as he was preparing to leave for work, the police arrived at his home. On that morning, defendant was asleep on a couch in the living room, his stepson Kenneth Griffiths was asleep on another couch in the living room, and his other stepson, Kevin Griffiths, was asleep in a bedroom.

Mr. Callaway's testimony confirmed that the police advised him they wanted to talk to defendant and that the police asked his permission and he allowed the police to enter the house. Although he was at the house when the police arrested defendant, he left for work before the police took defendant to the police station. He advised the circuit court that his wife was not home, as she had gone to work. He said that the police never asked his permission to search the house that day but that he did sign a consent to search form the following day. No search was conducted after he signed the consent form.

Mr. Callaway testified that defendant had complete access to his home, just as everyone who lived there did. According to Mr. Callaway, defendant shared the bedroom occupied by Kevin Griffiths.

Kevin Griffiths, defendant's stepbrother, testified that on the morning of May 7, 1986, between 6:30 a.m. and 7 a.m., he was at home in his bedroom, asleep. He was awakened when defendant and two police officers, Officers Burke and Smith, came into the bedroom. When he observed Officer Smith place his hand inside a dresser drawer, he told the officer that he needed a search warrant before he conducted a search. According to Kevin's testimony, he was never asked if he would permit a search nor did anyone, including Kenneth, grant the officers permission to conduct a search of the premises. On cross-examination, Kevin admitted that he had two prior misdemeanor theft convictions. Further, he stated that no search was made until after the police returned to the house with a consent form.

Kenneth Griffiths, defendant's other stepbrother, stated that on the morning of May 7, 1986, he was asleep on a couch in the living room and that defendant was asleep on another couch in that room. Three officers came into the house, asked defendant some questions, and then placed defendant under arrest. Kenneth admitted that he heard both Kevin and defendant tell the police officers that a search warrant was necessary before a search could be conducted. He denied that he gave the officers oral permission to search the premises before the officers took defendant to the police station. However, he admitted he signed a form upon the police officers' return to the house. Although he only partially read the form, he knew when he signed the form that the police would be entitled to search the house.

After taking the motion to suppress under consideration, the circuit court entered a written order in which it found that the search of defendant's home was valid, as both the oral and written consent to search given by Kenneth Griffiths was voluntary. The circuit court determined that as the evidence found was in areas of the home in which Kenneth had common authority, defendant's refusal to allow the search did not diminish Kenneth's consent. The circuit court further held that defendant could have no expectation of privacy in the boots underneath the hall tree located on the built-in back porch or in the Weber grill in the backyard. For these reasons, the circuit court denied defendant's motion to suppress.

At the hearing on the post-trial motion in which defendant raised the correctness of the circuit court's ruling on his motion to suppress evidence, no evidence was presented. The circuit court, after hearing arguments of counsel, took the matter under advisement. Based upon the transcript of the hearing of the motion to suppress, the case authority presented by counsel, and the arguments of counsel, the circuit court determined that while a joint occupant, having equal rights to the premises, may consent to a search, such consent will not prevail where a defendant has, prior to the joint occupant's consent, voiced his objections to a search without a search warrant and where a defendant is absent during the search, not of his own accord but by virtue of his arrest. The circuit court found that the evidence obtained as a result of the search was improperly admitted and granted defendant a new trial.

■ It is well established that, under the fourth and fourteenth amendments (U.S. Const., amends. IV, XIV), a search conducted without a search warrant is *per se* unreasonable. One exception to the requirements of both a search warrant and probable cause is a search that is conducted pursuant to consent. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.) In order for the consent to be valid, it must be freely and voluntarily given. Whether a consent is voluntary is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.

■ It is equally well settled that consent to search need not be obtained from a defendant, but that consent may be granted by a third party if that person possesses common authority over the premises to be searched. (*United States v. Matlock* (1974), 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988.) The United States Supreme Court defined "common authority" in a footnote in *Matlock* as follows:

"Common authority is, of course, not to be implied from the

mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, [citation] but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (*United States v. Matlock* (1974), 415 U.S. 164, 172 n.7, 39 L. Ed. 2d 242, 250 n.7, 94 S. Ct. 988, 993 n.7.)

Thus it is clear that the right of a joint occupant to consent to a search is a right independent of defendant, and when a defendant elects to cohabit with others, he assumes the risk that a joint occupant may permit the search of common areas. This standard for third-party consent, *i.e.*, the common authority test, was adopted by the Illinois Supreme Court in *People v. Stacey* (1974), 58 Ill. 2d 83, 317 N.E.2d 24. See also *People v. Howard* (1984), 121 Ill. App. 3d 938, 460 N.E.2d 432; *People v. Seidel* (1983), 115 Ill. App. 3d 471, 449 N.E.2d 1384; *People v. Posey* (1981), 99 Ill. App. 3d 943, 426 N.E.2d 209.

▮▮ Before considering whether the defendant's prior refusal to search overrode a subsequent consent to a search by a joint occupant, we will first address whether defendant's stepbrother's consent was a valid consent standing alone. The initial inquiry must be whether Kenneth's consent was voluntary. Defendant contends that Kenneth's consent was not voluntarily given but was obtained as a result of his submission or resignation to police authority. He claims that Kenneth was coerced by defendant's warrantless arrest, by the officers' securing the house, and by the officers' failing to advise him of his right to refuse to consent.

We find nothing in the record of this case to support defendant's argument that Kenneth's consent to the search was not voluntary. Regarding defendant's claim that he was not advised of his right to refuse to consent to a search, Kenneth testified that he heard both his brother and defendant state that the police needed a search warrant in order to conduct a search. Therefore he was aware that consent could be refused. Additionally, even if Kenneth had not been informed of his right to refuse consent, such failure would not render the consent involuntary, but would be simply a factor to be considered when determining the voluntariness of the consent. *Schneckloth v. Busta-monte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.

Further, the fact that an officer remained behind to secure defendant's home when defendant was taken to the police station was not coercive. At the hearing on the motion to suppress, the circuit court found that Kenneth had voluntarily consented to the search both orally and in writing. At the hearing on the post-trial motion, the circuit court did not consider the voluntariness of Kenneth Griffiths' consent, but limited its determination to the fact that the search was invalid because defendant had initially voiced his objections to the search after which a subsequent consent was obtained. Thus, while the voluntariness of the consent was not considered at the hearing on the post-trial motion, it should be noted that the original ruling finding the consent voluntary was not overruled. The circuit court's finding that Kenneth's consent was voluntarily given demonstrates that the circuit court considered the officers' testimony more credible than Kenneth's testimony. Because Kenneth gave his oral consent to search before defendant was taken to the police station and before the officer remained behind to secure the house, the argument that the officer's presence coerced Kenneth's consent is not persuasive. The voluntariness of a consent is a question to be determined in the first instance by a circuit court and its finding will be affirmed on review unless clearly unreasonable. In considering the voluntariness of the consent, credibility of the witnesses and the weight accorded their testimony is left to the discretion of the circuit court. (*People v. Branham* (1985), 137 Ill. App. 3d 896, 484 N.E.2d 1226.) We do not find that the circuit court's original determination that Kenneth's consent was voluntary unreasonable.

■ Next we must consider whether Kenneth had sufficient common authority to consent to the search of the premises where the evidence was found. Defendant's father testified that both defendant and Kenneth resided in the house and that everyone who lived in his home had equal access to the entire house and its surroundings. None of the areas where the evidence was obtained, *i.e.*, the built-in back porch and the Weber grill in the backyard, were in the exclusive control of defendant. It appears from this evidence that Kenneth had sufficient authority to consent to the search, and under the common authority test set out in *Matlock*, his consent was valid.

■ The crucial question in this case is whether, where a joint occupant has equal common authority to consent to a search, a subsequent consent given after a defendant has refused to consent to a search is negated by the defendant's refusal. Under the circumstances presented in this case, we find that defendant's prior statement that a search warrant was needed does not invalidate his stepbrother's con-

sent. Several reasons enter into this determination. First and foremost is the principle that each occupant of a residence has his own right to permit or to refuse consent to a search. This right is separate and distinct for each and every occupant and as such can be exercised by any occupant at any time. (*United States v. Matlock* (1974), 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988.) Here, Kenneth Griffiths' right to consent to a search was equal to defendant's right to refuse. Under *Matlock*, it would appear that if a consent to search is voluntarily given by at least one joint occupant with equal common authority, the search must be upheld. The fact that any evidence found may be used against the defendant does not elevate defendant's equal right to refuse to a superior right. By its very nature, incriminating evidence is harmful to a defendant, and this fact alone is insufficient to raise defendant's right to refuse consent above his stepbrother's equal right to consent.

A second and equally compelling consideration in this case is the areas of the residence where the evidence was found. It cannot be said that defendant had any expectation of privacy in either the built-in back porch or the Weber barbecue grill in the backyard. Recognizing that the common authority test is the standard for determining the validity of a consent, the lack of defendant's expectation of privacy in the areas searched is a persuasive factor in determining the validity of Kenneth Griffiths' consent.

Another consideration is the fact that neither defendant nor Kevin Griffiths was explicitly asked if the police officers could search the premises. The circuit court construed defendant's and Kevin's statements that a search warrant was necessary as a refusal to search. We do not question this construction, but note that Kenneth was the first occupant questioned as to whether he would consent to the search.

We also find that Kenneth's consent was given with the knowledge that defendant and his stepbrother had stated that a search warrant was required. Kenneth was aware that the purpose of the search was to obtain evidence connected with a crime. His consent was given knowing that defendant was arrested for a burglary and that if incriminating evidence was found, it would be used against defendant. This is not a case where the party consenting is unaware that a defendant has refused a search and compromises a defendant's rights unknowingly. With the knowledge of both his brother's refusal and of defendant's refusal, Kenneth Griffiths' consent can only be construed as a true exercise of his right to permit a search of his home.

■ Lastly, our decision to uphold the validity of the search in this

case is in accord with other out-of-State cases where a search conducted pursuant to a third party's voluntary consent is not invalidated by a present and objecting defendant. (See *United States v. Hendrix* (D.C. Cir. 1979), 595 F.2d 883; *People v. Cosme* (1979), 48 N.Y.2d 286, 397 N.E.2d 1319, 422 N.Y.S.2d 652.) We are in agreement with the reasoning of those cases that a person having common authority to consent to a search is sufficient to override a defendant's objections to a search.

For the foregoing reasons, we disagree with the circuit court's determination that defendant's prior refusal to allow the search vitiated Kenneth's equal and independent right to permit the search and reverse the Christian County circuit court's order granting defendant a new trial.

Reversed.

KARNS and WELCH, JJ., concur.