THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KENNETH BLIEY, Defendant-Appellant.

First District (4th Division) No. 1—88—2389

Opinion filed July 30, 1992.

Randolph N. Stone, Public Defender, of Chicago (Elizabeth Burke and Jeffrey Howard, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Jean Quinn, Special Assistant State's Attorney, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Kenneth Bliey, was convicted of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)) and attempted murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(a), 9—1(a)) following a jury trial in the circuit court of Cook County. The trial judge sentenced defendant to a prison term of natural life on the murder conviction and a concurrent prison term of 30 years on the attempted murder conviction.

Defendant appeals, contending the trial judge: (1) erred by denying defendant's motion to suppress evidence; (2) denied defendant a fair trial by admitting evidence that he previously sold drugs to the victims; (3) incorrectly admonished defendant before allowing him to represent himself; (4) denied defendant his right to the assistance of counsel during *voir dire* and opening statements; (5) erred by denying defendant's motion for the appointment of counsel other than the public defender; and (6) erred by denying defendant's motion for a continuance. Defendant also contends: (7) the State failed to prove him guilty beyond a reasonable doubt, and (8) defendant's sentence was improper and excessive.

We affirm the judgment of the trial court.

BACKGROUND

The record contains the following pertinent facts. On December 5, 1986, defendant was charged in a 10-count indictment with offenses stemming from the shooting death of Anthony Jones and the shooting of Ronald Nelson.

A

On December 9, 1987, the trial court held a hearing on defendant's motion to quash the arrest and suppress evidence. Defendant's evidence was essentially as follows.

On the evening of October 28, 1986, defendant was in his mother's second-floor apartment in a two-flat building located at 5546 West Adams Street in Chicago. Defendant's grandfather resided in the first-floor apartment and defendant resided in the basement. Defendant had been in his mother's apartment since 9:45 p.m. At approximately 11 p.m., defendant and his mother heard knocking from the building's front door. Defendant went downstairs to investigate. Chicago police officers had broken the lock on the outer door and were trying to break open the inner door.

Defendant opened the door. Several police officers asked defendant whether he was Kenneth Walker; defendant identified himself. Some police officers ran past defendant upstairs; others stayed with him on the first floor and handcuffed him to a railing. Police searched the apartment of defendant's mother. The officers returned and questioned defendant. They then led defendant, in handcuffs, out of the building. A squad car was parked in front of the building. Cassandra Burress and a man in civilian clothes were in the car. Defendant overheard one police officer say to another: "The guy doesn't know, he said he didn't think so; the girl is hysterical but she says it could be." The other officer responded: "We'll take him in anyway."

The police returned to the apartment of defendant's mother and again searched it. They then went to the basement apartment where defendant lived. The basement door had a lock on it, but the lock was broken at that time. Defendant had lived in the basement for over a year. Defendant's mother never entered the basement without defendant's permission because it was his exclusive and private living area.

The police searched the basement. They seized a reversible jacket, a pair of black pants, and a set of keys. On the day of his arrest, defendant did not wear those items. Also, the police did not have an arrest or a search warrant. Neither defendant nor his mother gave consent to the police to search his basement apartment.

The State's evidence was essentially as follows. On the night of October 28, 1986, Chicago police officer Robert McGoon and his partner, Officer Donald Johnson, were on duty. In response to a radio call, Officers McGoon and Johnson went to 24 South Central Avenue, where they saw the two victims. At the scene, Cassandra Burress approached Officer McGoon and told him that she saw a man named Ken shoot Anthony Jones. She described Ken as male, black, in his thirties, approximately six feet tall and 150 pounds,

and wearing dark clothes. Burress further stated that Ken lived in the 5500 block of West Adams Street, about 1½ blocks from the scene of the crime.

Officers McGoon and Johnson, with Burress, drove to the 5500 block of West Adams Street. They asked passersby where a man named Ken lived; the officers were directed to the Bliey residence.

Officers McGoon and Johnson knocked on the door that leads to the second-floor apartment. Burress remained in the squad car. Defendant came downstairs and answered the door. Defendant appeared nervous and upset. McGoon asked defendant his name and if defendant lived there. Defendant refused to identify himself. However, he assented to the officers' request that he walk outside and answer questions. Up to this time, defendant had not been handcuffed. When defendant accompanied the police outside of the residence, he was not handcuffed and was free to leave.

Defendant accompanied the officers to the squad car containing Burress. She identified defendant as the shooter. Burress was emotionally upset immediately prior to her identification; when she saw defendant, she was "kind of frantic and yelling." It was at that point that the police arrested defendant, handcuffed him, and placed him in another squad car.

Officers McGoon and Johnson returned to the residence and spoke with defendant's mother. She said that the building was her home. The officers asked defendant's mother if they could search her home for a weapon. She consented and accompanied the officers through the building and down to the basement. The basement was a wide-open room that contained a couch, chair, dresser, and possibly a bed. The officers did not search the dresser. In the basement, the officers observed a man's reversible jacket, a pair of black pants, and a set of keys, all resting on a chair. Other than the door to the basement, there were no other doors in the area where the clothes were found. Based on Burress' description of the shooter's clothing, the officers seized the clothes and keys, and showed them to Burress. She identified them as the clothes defendant wore during the shooting.

The trial court denied defendant's motion to quash the arrest and suppress evidence. The trial judge ruled that the police had probable cause to arrest defendant, based on Burress' description and identification. The trial judge also ruled that defendant's mother gave a valid consent to the police to search the basement. The judge found that she did, in fact, consent to the search and,

further, that she had the authority to do so. The trial judge also found that the search was reasonable.

## B

On June 13, 1988, defendant requested a continuance. He also requested another attorney, other than an assistant public defender, or, alternatively, to proceed *pro se*. Up to that point, defendant had been represented by an assistant public defender. However, defendant explained that he had joined a class action against the Cook County public defender's office; he had lost confidence in his attorney due to the attorney's discussion of a guilty plea; and communication with his attorney had ceased. Defendant's attorney stated that he was prepared to represent defendant.

The trial court denied defendant's motion for a continuance and for an attorney other than the assistant public defender appointed to represent him. However, the court allowed defendant to proceed *pro se*. Prior to ruling on defendant's motion, the trial court, pursuant to Supreme Court Rule 401(a) (134 Ill. 2d R. 401(a)), advised defendant, *inter alia*, that the penalties for murder ranged from 20 years to a death sentence. The assistant public defender remained available to assist defendant, but was warned not to interfere with defendant's representation of himself.

*Voir dire* took place that afternoon. Defendant represented himself, but consulted with the assistant public defender on the selection of a few jurors.

The next day, defendant sought a 90-day continuance, which the trial judge denied. The State then entered a *nolle prosequi* on five of the indictment's 10 counts. The trial judge then advised defendant that the penalties he faced on the remaining charges ranged from 20 to 80 years.

The trial proceeded to opening statements. Defendant addressed his statement, not to the merits of the case, but rather to his objection to proceeding to trial without a lawyer of his own choosing. After opening statements, defendant informed the trial judge that defendant wanted the assistant public defender to represent him. Defense counsel immediately moved for a mistrial because defendant participated in *voir dire* and opening statements without assistance of counsel. The trial judge denied the motion. Defense counsel made a motion *in limine* to exclude testimony on drug dealing by defendant. The judge denied the motion, ruling that drug transactions between defendant and Nelson showed identity and motive.

## C

Without repeating the evidence presented at the suppression hearing, the State's evidence at trial was essentially as follows. Ronald Nelson had known defendant for one or two years prior to the shooting. An admitted narcotics user, Nelson bought cocaine from defendant three or four times weekly, either on the street or in defendant's home.

At approximately 8:30 p.m. on October 28, 1986, Nelson visited his friend Anthony Jones at 24 South Central Avenue. Jones shared an apartment with his fiancee, Cassandra Burress. Nelson and Jones injected cocaine. At approximately 9:30 p.m., they left the apartment. As they walked down the front steps of Jones' apartment building, defendant approached them. He carried a shopping bag. Defendant came within two feet of Nelson and Jones. The lighting was adequate; a streetlight stood in front of Jones' residence.

Defendant asked Nelson and Jones for a cigarette; Jones gave one to defendant. Defendant then asked them for $5. Nelson said that he did not have any money, and he walked to his automobile parked in front of Jones' residence. Jones remained standing on the sidewalk. Defendant then declared that he would take the money. He produced from the shopping bag a .12 gauge, pump-action, sawed-off shotgun. Defendant pointed the weapon at Jones, who begged defendant not to shoot. Defendant shot Jones twice, once in each leg.

Nelson was in his car approximately 25 feet from defendant and Jones. Nelson was trying to start his car. After defendant shot Jones, defendant approached Nelson's car. Nelson looked up and saw defendant approximately two feet away; defendant held a handgun aimed at Nelson's face. Defendant shot Nelson in the face; the bullet entered the lower lip and exited the right cheek. Nelson "played dead" by dropping his head to the steering wheel. Defendant then returned to where Jones lay. Defendant shot Jones with the shotgun twice more.

Nelson looked up and saw defendant walking toward the car. Nelson got out of the car and ran. Defendant chased Nelson and fired at him once more with a handgun. Nelson waved at an approaching squad car. The car stopped and a police officer exited the car and chased an unidentified person. Nelson returned to his car. Police subsequently arrived and took Nelson to the hospital. At the hospital, Nelson gave police a description of the shooter. Nelson re-

quired surgery on his bottom jaw and hospitalization for several weeks. At trial, Nelson identified defendant as the shooter.

Cassandra Burress knew defendant as "Ken" and saw him once or twice weekly during the previous year. Also, earlier that evening, she saw defendant with another man.

After defendant's first two shotgun blasts at Jones, Burress looked out of the front window of her apartment. She saw defendant chasing Nelson around his car and firing a handgun at Nelson. She also saw Jones lying under a bush in a vacant lot next to her residence. Burress telephoned police and met them upon their arrival.

At the time of defendant's arrest, at his home, Burress identified the clothes that defendant wore at the time of the shooting. When she identified defendant, she observed that he had changed his clothes after the shooting.

At the time of the shooting, Chicago police officer Joseph Lombardi was driving his squad car in the vicinity of the shooting. The car windows were down. Officer Lombardi heard three shotgun blasts and, seconds later, two more shotgun blasts. He stopped his car and got out with his pistol drawn. He was approximately 50 to 60 feet from where the shooting occurred. He described the scene as a commotion; many bystanders were running in all directions.

While standing by his squad car, Officer Lombardi heard pellets strike the rear of the car. He radioed for assistance and then chased and stopped a possible suspect. After questioning the bystander, Officer Lombardi returned to the crime scene. He found Nelson bleeding from his face and Jones, still alive, lying in a vacant lot under a bush. Several spent shotgun shells were found within seven or eight feet of Jones.

Jones died that night of multiple shotgun wounds. The instrument of death was a .12 gauge, pump-action shotgun.

Without repeating the evidence presented at the suppression hearing, defendant's evidence at trial was essentially as follows. On the night of the shooting, defendant was talking with a friend near Burress' residence. Defendant saw Burress and greeted her. Defendant was wearing a red hat and pants, a red and black sweater, and a gray jacket. After speaking with his friend, defendant went home at approximately 8 p.m. He went upstairs and announced his arrival to his mother. He then returned to the basement and watched television. In addition to his mother, defendant's sister and nephew were also in the second-floor apartment.

At 9 p.m., defendant's friend arrived at defendant's home. At approximately 9:30 p.m., defendant was walking upstairs when he heard shots. Defendant remained upstairs and played with his nephew. Approximately 45 minutes after hearing the shots, the police arrived.

Defendant recently argued with Nelson prior to the shooting. Nelson visited defendant at his home to buy narcotics. Defendant turned Nelson away because defendant is not a drug dealer.

At the close of the trial, the jury convicted defendant as charged. Specifically, the jury convicted defendant of the murder of Jones, the attempted murder and aggravated battery of Nelson, and armed violence.

At the sentencing hearing, the trial judge denied defendant's post-trial motion. At the close of the hearing, the trial judge found that Jones' murder was accompanied by exceptionally brutal and heinous conduct indicative of wanton cruelty. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b).) The trial judge sentenced defendant to a prison term of natural life on the murder conviction and a concurrent prison term of 30 years on the attempted murder conviction. Defendant appeals.

OPINION

I

Defendant first claims that the trial judge erred by denying defendant's motion to suppress evidence. Defendant contends the search of his room by the police was invalid because his mother's consent to the search was invalid. Defendant alternatively argues that his mother: (A) did not consent to the search, (B) lacked common authority over his room, and (C) could not consent to the search because he was present at the scene.

Under the fourth and fourteenth amendments to the United States Constitution, a search conducted without a search warrant is *per se* unreasonable. An exception to the requirements of a search warrant and probable cause is a search that is conducted pursuant to consent. (*People v. Callaway* (1988), 167 Ill. App. 3d 872, 877, 522 N.E.2d 337, 340; *People v. Johnson* (1974), 23 Ill. App. 3d 886, 891, 321 N.E.2d 38, 42-43.) To be valid, the consent must be freely and voluntarily given. Whether a consent is voluntary is a question of fact to be determined from all of the circumstances. *Callaway*, 167 Ill. App. 3d at 877, 522 N.E.2d at 340.

Also, on a motion to suppress evidence, the burden of proof is on the defendant to establish that the search was unreasonable. (*People v. Brown* (1987), 162 Ill. App. 3d 528, 540, 515 N.E.2d 1285, 1292.) A trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. *Brown*, 162 Ill. App. 3d at 535, 515 N.E.2d at 1289.

A

Defendant initially argues that his mother did not consent to the search of his room. Defendant points to her testimony to that effect at the suppression hearing. However, Officer McGoon testified that defendant's mother consented to the search. Thus, the evidence of whether defendant's mother consented to the search was merely conflicting. "Under these circumstances, the resolution of the question is left to the trial court whose decision will be accepted on review unless clearly unreasonable." *People v. Howard* (1984), 121 Ill. App. 3d 938, 946, 460 N.E.2d 432, 438.

█ Defendant asserts that "it is not likely that she [his mother] would have allowed this search." However, there are several reasons why defendant's mother may have consented to the search, *e.g.*, to show that neither she nor defendant had anything to hide, or to simply cooperate with the police. This was a question of fact for the trial court. We cannot say that the trial court's finding that defendant's mother voluntarily consented to the search was clearly unreasonable. See *Howard*, 121 Ill. App. 3d at 946, 460 N.E.2d at 438.

B

Defendant next argues that his mother lacked common authority over his room. The standard which determines the validity of a third-party consent is the common authority test. Under that test, consent to search may be given by persons having joint access to, or control of, the searched premises. Where the defendant lives with a parent or other close relative, and the relative consents to a search of defendant's bedroom, a court presumes that the relative has sufficient common authority over the bedroom to authorize the consent to search. *Howard*, 121 Ill. App. 3d at 946-47, 460 N.E.2d at 438 (and cases cited therein).

However, the presumption of common authority may be overcome by evidence that defendant had exclusive possession of the searched premises. Two factors indicative of exclusive possession are whether the room was locked in defendant's absence and

whether defendant gave explicit instructions not to allow anyone into the bedroom. Where the evidence fails to establish these two factors, the attack on the third-party consent to search fails. *Howard*, 121 Ill. App. 3d at 947, 460 N.E.2d at 438-39.

■ After carefully reviewing the record, we conclude that the evidence fails to establish defendant's exclusive possession of his room. The record does not contain evidence that the basement door was locked; the record also lacks evidence that defendant explicitly instructed his mother not to allow anyone into the bedroom. We hold that defendant's mother was authorized to consent to the search. See *People v. Baske* (1978), 66 Ill. App. 3d 590, 598, 383 N.E.2d 1322, 1328-29.

## C

■ Defendant also argues that his mother could not consent to the search of his room because he was present at the scene. We disagree. The right of defendant's mother to consent to the search was separate and distinct from that of defendant and could be exercised at any time. Thus, so long as defendant's mother was authorized to consent to the search, which she was, she could do so whether defendant was present or absent. (See *Callaway*, 167 Ill. App. 3d at 880, 522 N.E.2d at 342-43.) We hold that the third-party consent of defendant's mother to search defendant's room was valid.

## II

■ Defendant next claims that the trial judge denied defendant a fair trial by admitting evidence that he previously sold narcotics to the victims. The record shows that defense counsel moved *in limine* to exclude the evidence and objected to Nelson's testimony on the issue at trial.

However, the record also shows that defendant failed to include the issue in his post-trial motion; thus, the issue is waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Further, after carefully reviewing the record, we conclude that this alleged error does not rise to the level of plain error. See 134 Ill. 2d R. 615(a); *People v. Sanders* (1981), 103 Ill. App. 3d 700, 710-11, 431 N.E.2d 1145, 1153-54.

## III

Defendant claims the trial judge incorrectly admonished defendant prior to allowing him to represent himself. The record indisput-

ably shows that the trial judge incorrectly advised defendant of the maximum sentence possible. The trial judge advised defendant that the maximum sentence he could face was an extended prison term of 80 years. The trial judge did not tell defendant that he could face a prison sentence of natural life, which the trial judge eventually imposed. Thus, defendant argues, his waiver of counsel was not knowing or intelligent and, therefore, he is entitled to a new trial.

Supreme Court Rule 401(a) requires the trial court to advise a defendant of the nature of the charges against him, the minimum and maximum sentences possible, and his right to counsel. (134 Ill. 2d R. 401(a).) The purpose of the rule is to provide a procedure that eliminates any doubt that the defendant understands the charges against him and its consequences before a trial court accepts his waiver of the right to counsel, and to preclude a defendant from waiving the right to counsel without full knowledge and understanding. (*People v. Smith* (1985), 133 Ill. App. 3d 574, 578, 479 N.E.2d 24, 28; *People v. Vaughn* (1983), 116 Ill. App. 3d 193, 196, 451 N.E.2d 898, 901.) It is now settled that a trial court must strictly comply with Rule 401(a); substantial compliance is not sufficient. *People v. Crittenden* (1986), 149 Ill. App. 3d 121, 124-25, 500 N.E.2d 678, 679-80; *Smith*, 133 Ill. App. 3d at 579, 479 N.E.2d at 28-29.

However, it is equally settled "that where a defendant proceeds to trial with the 'technical assistance' of an attorney, he has not waived counsel. In such a situation, the defendant need not be given the full admonishments of Supreme Court Rule 401(a)." *Smith*, 133 Ill. App. 3d at 579, 479 N.E.2d at 29.

Courts reason that a defendant who seeks to defend himself with the advice of counsel partakes of the freedom of defendant himself in addition to the expertise of an advisor with legal training. A defendant who wishes to act *pro se* desires to stand alone, but this does not occur if a lawyer assists him at trial. Thus, a defendant who receives such legal advice should not be heard to complain on appeal of improprieties pertaining to admonishments about proceeding *pro se* or of apparent deficiencies that relate to the defendant's waiver of legal assistance. *Smith*, 133 Ill. App. 3d at 579, 479 N.E.2d at 29, citing *People v. Hite* (1983), 115 Ill. App. 3d 66, 69, 450 N.E.2d 416, 418.

In the case at bar, the trial judge *sua sponte* asked the public defender assigned to represent defendant to remain as standby counsel. This distinguishes the present case from *Crittenden*, where the defendant "was not represented or assisted by counsel." (*Crit-*

*tenden*, 149 Ill. App. 3d at 124, 500 N.E.2d at 679.) "Requiring [a] defendant to proceed *pro se* with standby counsel is not a waiver within the meaning of Rule 401(a), and thus the admonitions of the rule were not required when the case proceeded to trial as scheduled." *Vaughn*, 116 Ill. App. 3d at 197, 451 N.E.2d at 901.

We note that in *People v. Derra* (1981), 92 Ill. App. 3d 1106, 416 N.E.2d 688, and *People v. Brown* (1980), 80 Ill. App. 3d 616, 399 N.E.2d 1374, this court held that Rule 401(a) admonishments were required even though those defendants had the benefit of standby counsel. In each of those cases, the defendant did not request standby counsel himself. Rather, the trial court *sua sponte* appointed standby counsel, who was "inactive" or "virtually silent" during the proceedings while the defendant conducted his own defense. The courts in those cases reasoned that the inactive standby counsel did not provide the defendants with the technical assistance of counsel. Since those defendants were representing themselves, they should have been given the Rule 401(a) admonishments. *Derra*, 92 Ill. App. 3d at 1109-10, 416 N.E.2d at 690-91; *Brown*, 80 Ill. App. 3d at 626-27, 399 N.E.2d at 1380-81. See *Smith*, 133 Ill. App. 3d at 580, 479 N.E.2d at 29.

However, our supreme court has specifically held that it is not relevant whether or not a defendant actually chooses to avail himself of the services of standby counsel, or the extent to which standby counsel actually participated in the proceedings. (*People v. Johnson* (1987), 119 Ill. 2d 119, 136, 518 N.E.2d 100, 108.) Rather, our supreme court has held that a "[d]efendant's refusal to heed the advice or employ the services of appointed counsel did not necessitate that the circuit court admonish defendant in accordance with Rule 401(a)." (*People v. Myles* (1981), 86 Ill. 2d 260, 269, 427 N.E.2d 59, 63.) These holdings of our supreme court contradict the reasoning in *Brown* and *Derra*, and we question the authority of those cases on this issue.

■ In the case at bar, the trial court *sua sponte* appointed as standby counsel the assistant public defender assigned to represent defendant. Counsel assisted defendant during a portion of *voir dire* and gave defendant all of the information that counsel had accumulated on the case. Defendant refused to employ the services of his standby counsel to any greater extent. For this reason, we conclude that defendant need not have been given the full admonishments of Rule 401(a). We reach this conclusion even though the procedure was initiated by the court, and even though standby counsel was mostly silent during *voir dire* and opening statements. (See *Smith*,

133 Ill. App. 3d at 581, 479 N.E.2d at 30.) Therefore, we hold that defendant was not denied a fair trial on this ground.

## IV

Defendant next claims that the trial judge erred by denying: (A) defendant's right to the effective assistance of counsel during *voir dire* and opening statements; (B) his motion for the appointment of counsel other than the public defender; and (C) his motion for a continuance.

## A

Defendant argues that he was denied the effective assistance of counsel during *voir dire* and opening statements. He points to the obvious fact that he was not represented by counsel during those proceedings. He contends that his waiver of counsel was ineffective because he did not receive the full admonishments of Rule 401(a). Therefore, defendant argues, he was "denied" his constitutional right to the effective assistance of counsel.

We earlier concluded that defendant need not have been given the full admonishments of Rule 401(a) because he received standby counsel, whose services defendant refused to employ. In *Myles*, our supreme court held that where a defendant refuses to cooperate with appointed counsel, the fact that defendant did not receive adequate assistance is attributable solely to himself. Thus, the defendant is estopped to assert the incompetence of counsel. (*Myles*, 86 Ill. 2d at 269-71, 427 N.E.2d at 63-64.) We hold that the trial judge did not deny defendant the right to the effective assistance of counsel.

## B

Defendant also argues that the trial judge erred by denying his motion for the appointment of counsel other than the public defender. Defendant based his motion on the class action, of which he is a party, against the Cook County public defender's office.

An indigent defendant has the constitutional right to have counsel appointed, but that does not include the right to select counsel for appointment. (*People v. Hall* (1986), 114 Ill. 2d 376, 403, 499 N.E.2d 1335, 1345.) In Illinois, an indigent defendant does not have the right to appointed private counsel absent a showing of prejudice to the defendant's rights. *Hall*, 114 Ill. 2d at 401-03, 499 N.E.2d at 1344-45.

■ In the present case, defendant has failed to show that the representation of his trial counsel—the assistant public defender—prejudiced his rights. Defendant's trial counsel did not labor under any *per se* conflict of interest based on the class action in which he was not specifically named. (See *People v. Banks* (1987), 121 Ill. 2d 36, 520 N.E.2d 617.) Further, defendant cannot be heard to complain of prejudice since the claim arose from his own conduct. (See *Myles*, 86 Ill. 2d at 269-71, 427 N.E.2d at 63-64, cited in *Hall*, 114 Ill. 2d at 404, 499 N.E.2d at 1346.) We find no error in the trial judge's denial of defendant's motion for the appointment of private counsel.

## C

Defendant also argues that the trial judge erred by denying defendant's motion for a continuance once he decided to represent himself. The decision to grant or to deny a motion for a continuance rests within the trial court's sound discretion and will not be disturbed on review unless the trial court exceeded its discretion. *People v. Friedman* (1980), 79 Ill. 2d 341, 347-48, 403 N.E.2d 229, 233; *People v. Hayes* (1972), 52 Ill. 2d 170, 175, 287 N.E.2d 465, 467.

■ In the case at bar, defense counsel was appointed in ample time to prepare a defense. " 'Since defendant utterly refused to cooperate with his counsel, he cannot now be heard to complain that the denial of the motion for continuance embarrassed his defense or prejudiced his rights.' " (*Myles*, 86 Ill. 2d at 270, 427 N.E.2d at 63, quoting *People v. Solomon* (1962), 24 Ill. 2d 586, 590, 182 N.E.2d 736, 738.) We cannot say that the trial court exceeded its discretion in denying defendant's motion for a continuance.

## V

Defendant next claims that the State failed to prove beyond a reasonable doubt his guilt. He essentially attacks the sufficiency of the evidence against him.

Of course, the State carries the burden of proving beyond a reasonable doubt each element of the offense and defendant's guilt. On appeal, however, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt.

*People v. Eyler* (1989), 133 Ill. 2d 173, 191, 549 N.E.2d 268, 276; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276-77.

We have carefully reviewed the entire record in the case at bar. We cannot say that the evidence was so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt.

## VI

Defendant lastly claims that his prison sentence of natural life was improper and excessive. It is true that Supreme Court Rule 615(b)(4) authorizes this court to reduce a criminal sentence. (134 Ill. 2d R. 615(b)(4).) However, a sentencing decision is a matter of considerable judicial discretion, and we will not exercise our power to reduce a sentence unless the trial court exceeded its discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.

Defendant was convicted of murder. Absent aggravating factors that qualify a defendant for the death penalty, murder normally carries a sentence of 20 to 40 years. However, if a trial judge "finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty," the trial judge may sentence a defendant to a prison term of natural life. Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—1(a)(1)(a), (b).

## A

We initially address defendant's argument that Unified Corrections Code section 5—8—1(a)(1)(b) is unconstitutional. Defendant argues that the provision denies due process and equal protection. Defendant posits that a trial judge, based on a finding of brutal or heinous behavior, has unbridled discretion to sentence a defendant to a prison term of natural life rather than an extended term of years. (Compare Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b), with Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.2(b)(2), 1005—8—2(a)(1).) This court has repeatedly rejected this argument and we do so again. See, *e.g., People v. Abernathy* (1989), 189 Ill. App. 3d 292, 317-18, 545 N.E.2d 201, 218-19; *People v. Burke* (1987), 164 Ill. App. 3d 889, 899-900, 518 N.E.2d 372, 378-79.

## B

Defendant also assigns error to the trial judge's finding that defendant's behavior was exceptionally brutal or heinous. "Brutal" behavior includes conduct that is grossly ruthless, devoid of mercy

or compassion, or cruel and cold-blooded. "Heinous" behavior includes conduct that is hatefully or shockingly evil, grossly bad, and enormously and flagrantly criminal. A finding that the defendant inflicted upon the victim torture or unnecessary pain is not a prerequisite to finding that the defendant's behavior was brutal or heinous. *Abernathy*, 189 Ill. App. 3d at 316, 545 N.E.2d at 217; *People v. Wade* (1989), 185 Ill. App. 3d 898, 902, 542 N.E.2d 58, 61.

 After carefully reviewing the record, we cannot say that the trial judge exceeded his discretion. The record shows that the victims were unarmed and defenseless, and did not provoke defendant's behavior. Defendant shot Jones twice at close range with a shotgun. Defendant then shot Nelson in the face with a handgun. Defendant then returned to where Jones lay and shot him twice more with a shotgun. Defendant shot the victims casually and methodically. We uphold the trial judge's finding that defendant's behavior was exceptionally brutal or heinous. See, *e.g., People v. Taylor* (1987), 164 Ill. App. 3d 938, 944, 518 N.E.2d 409, 412-13; *People v. Walker* (1985), 136 Ill. App. 3d 177, 182, 483 N.E.2d 301, 305.

## C

 Defendant lastly argues that his sentence was excessive. He posits that the trial judge: (1) did not adequately consider the mitigating evidence presented at the sentencing hearing, and (2) based his sentence "upon irrelevant and prejudicial considerations."

However, the record shows that the trial judge considered all of the evidence and many different factors prior to imposing sentence. The trial judge did not arrive at the sentence arbitrarily; we cannot say that he exceeded his discretion. We uphold defendant's prison sentence of natural life.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.