THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KENNETH HUFFAR, Defendant-Appellee.

Second District   No. 2—98—1608

Opinion filed May 25, 2000.

THOMAS, J., dissenting.

Gary W. Pack, State's Attorney, of Woodstock (Anne K. Brophy, Assistant State's Attorney, and Martin P. Moltz and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Kenneth Huffar, of Hoffman Estates, appellee *pro se*.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Kenneth Huffar, was charged with the manufacture of cannabis and the possession of cannabis with the intent to deliver (720 ILCS 550/5(d) (West 1998)). He moved to suppress evidence, arguing that the search that disclosed it violated his rights under the fourth and fourteenth amendments (U.S. Const., amends. IV, XIV). The trial court granted that motion. The State appeals, arguing that a third party's valid consent supported the search. We affirm.

At the hearing on the motion to suppress, the trial court heard the following evidence. Dorothy L. Fay testified that she owned a two-unit apartment building. She lived on the first floor, in apartment No. 1. During the relevant period, defendant lived on the second floor, in apartment No. 2. The apartments had separate living quarters, utilities, and mail service.

The building contained an attic that could be accessed only through a stairway in apartment No. 2. When a tenant rented apartment No. 2, he rented the attic as well. Defendant rented apartment No. 2 on a month-to-month basis. He paid $350 per month, plus utilities.

One day, defendant's waterbed began to leak, and Fay entered his apartment to repair it. Defendant was not present. Later that day, police officers came to Fay's apartment. After a discussion, Fay agreed to let the police search the attic. She signed a consent form and told the officers how to access the attic. She did not accompany them because the door to apartment No. 2 was unlocked. Defendant still was not present.

On cross-examination, Fay testified that defendant had not signed a written lease. When she went into apartment No. 2 to repair the waterbed, she noticed some extension cords running into the attic. A door separated the attic from the rest of apartment No. 2, but the door had no lock. She went into the attic and saw "black plastic" hanging from the ceiling. The attic contained some items that Fay

owned but did not use. On redirect examination, Fay stated that, if she wanted to use those items, she would ask her tenant for permission to retrieve them.

Jeff Rhode was one of the officers at the scene. He testified that the building contained an upper and a lower unit, but he did not see any apartment numbers. He described the building as "just an old home," distinguished only by the fact that a kitchen was on each floor. Fay told him that she owned the building and that defendant, her grandson, lived upstairs. She indicated that defendant was renting the "upstairs area." Rhode did not recall asking Fay what specifically was included in the leased premises.

Rhode told Fay that the police had received a complaint and asked for permission to search the attic. Fay executed a consent form, and Rhode asked her how to get to the attic. Fay told him that he would "have to go through her grandson's area to get to the doorway which led to the attic." Rhode followed Fay up an internal stairway from the first floor to the second floor. He noticed that an external stairway provided a mode of direct entry onto the second floor.

The door to the attic was open. There was no other practical way to enter the attic. In the attic, Rhode found a large, black plastic bag that contained cannabis.

On cross-examination, Rhode testified that Fay told him that she had been in the attic earlier in the day. She said that defendant rented the "upper apartment" but that she had personal items in the attic. Rhode believed that she was able to consent to a search of the attic.

After its motion for a directed finding was denied, the State called Daniel P. Wesolek, another officer who was at the scene. He testified that he saw a marijuana leaf in the "second floor apartment." However, the police merely walked through the second floor on the way to the attic; they collected evidence from no other part of the building.

On cross-examination, Wesolek testified that he did not observe that the building contained two separate apartments. He noticed that each floor had living quarters and a kitchen, but he did not see two mailboxes. He also noticed that an outer stairway provided a direct entrance onto the second floor. On the first floor, he observed only a family room and a kitchen. He did not ask Fay what portion of the building was rented. After Fay led the police to the second floor, they saw that they could enter the attic only by passing through those living quarters. The door to the attic was open.

Defendant recalled Fay for rebuttal. She testified that, before she signed the consent form, she and the officers did not discuss how the building was divided. On cross-examination, she stated again that she

did not go upstairs with the officers; she merely told Rhode that he could search the attic.

The trial court stated that the second floor was a separate unit that the police were not authorized to search. As a result, the court ruled, the officers were not permitted to enter that unit to get to the attic. Defendant's motion to suppress was granted, and the State's motion for reconsideration was denied. The State filed a certificate of impairment and notice of appeal. See 145 Ill. 2d R. 604(a)(1). Although defendant did not file an appellee's brief, we will address the merits of this appeal in accordance with *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

■ When a trial court's ruling on a motion to suppress evidence involves factual determinations and credibility assessments, we may reverse it only if it is manifestly erroneous. However, when the trial court faces no factual or credibility disputes, we conduct *de novo* review. *People v. Buss*, 187 Ill. 2d 144, 204-05 (1999). Here, we determine that the record contains no material conflicts in the evidence. Therefore, we review the trial court's ruling *de novo*.

■ Generally, the fourth amendment prohibits the warrantless search of a home. U.S. Const., amend. IV; *Illinois v. Rodriguez*, 497 U.S. 177, 181, 111 L. Ed. 2d 148, 156, 110 S. Ct. 2793, 2797 (1990). However, a warrantless search is constitutional if it is conducted with the voluntary consent of the person whose property is searched or of a third party who possesses common authority over the premises. *Rodriguez*, 497 U.S. at 181, 111 L. Ed. 2d at 156, 110 S. Ct. at 2797. Even if a third party lacks common authority, her consent validates a search if a police officer reasonably believes that she possesses it. *Rodriguez*, 497 U.S. at 188-89, 111 L. Ed. 2d at 161, 110 S. Ct. at 2801.

At issue here is whether Fay's consent supported the warrantless search of the attic. The State argues first that the search was valid because Fay actually possessed common authority over the attic. We disagree.

■ Generally, a landlord cannot validly consent to a search of leased premises. *People v. Kramer*, 204 Ill. App. 3d 1011, 1014 (1990). This is because common authority is not implied merely from a property interest but rests instead upon the mutual use of the property by persons generally having joint access or control for most purposes. *People v. Steinberg*, 260 Ill. App. 3d 653, 657 (1994). Regardless of the nature of their relationship or the mere commingling of their belongings, a third party and a defendant share common authority only if the third party's degree of control is equal to or greater than that possessed by the defendant. *People v. Pickens*, 275 Ill. App. 3d 108, 112 (1995).

Fay testified that the attic was part of apartment No. 2. As a result, although she used the attic to store some of her belongings, she generally could not go into the attic without her tenant's permission. Thus, her right to access the attic was not equal to or greater than defendant's right. This is so despite the apparent fact that Fay was able to enter apartment No. 2 to deal with maintenance problems, as she did soon before the police arrived. See *People v. Sedrel*, 184 Ill. App. 3d 1078, 1080-81 (1989).

It is true that, when a defendant lives with a close relative, courts will presume that the relative possesses common authority to consent to a search of the defendant's portion of the premises. *People v. Brooks*, 277 Ill. App. 3d 392, 400 (1996). However, although Fay and defendant were related, it is clear that they actually did not share any living space at all. Indeed, apartment No. 2 was completely distinct from apartment No. 1, with its own entrance, living quarters, kitchen, utilities, and mailing address. Hence, the presumption of common authority does not apply here as it does when relatives actually "live" together. *Cf. People v. Bliey*, 232 Ill. App. 3d 606, 609-10 (1992); *People v. Callaway*, 167 Ill. App. 3d 872, 875-76 (1988). Because the family relationship between Fay and defendant was completely incidental to their landlord-tenant relationship, Fay did not have actual common authority over the attic that defendant rented from her.

As we noted, however, this conclusion does not end our inquiry. The State argues alternatively that the search was valid because the police reasonably believed that Fay had common authority over the attic. Again, we disagree.

A third party who lacks actual common authority nevertheless has effective "apparent" common authority if the facts known to the officers were sufficient to enable them to reasonably conclude that the third party's right to occupy and use the area at least approximated that of the defendant. *People v. Keith M.*, 255 Ill. App. 3d 1071, 1084-85 (1993). We cannot use hindsight; the circumstances at the time of the entry control the determination whether the police reasonably believed that they had obtained valid consent. *Brooks*, 277 Ill. App. 3d at 400.

Before they entered the second floor, the police knew the following facts: (1) Fay owned the building; (2) Fay had personal items in the attic; and (3) Fay had been in the attic earlier in the day. All of these facts indicated that Fay had the authority to allow a search of the attic. Although Fay told the officers that defendant rented the "upper apartment," she did not specify that he rented the attic as well. Therefore, before the police entered the second floor, all that they knew about the attic indicated that Fay could access it at will.

However, when the officers reached the second floor, they learned

that they could access the attic only by entering the "upper apartment." The State does not argue, nor could it do so successfully, that Fay had apparent common authority over the second floor. Therefore, we must determine whether the police reasonably believed that Fay had common authority over the attic when they knew that she had to traverse defendant's separate living quarters to get there. We hold that they did not.

■ It is well established that the doctrine of apparent common authority does not allow a police officer to proceed without inquiry in ambiguous circumstances or to accept at face value the consenting party's apparent assumption that she has the authority to allow the search. *People v. James*, 163 Ill. 2d 302, 319 (1994). As Professor LaFave pointed out:

> "[S]ometimes the facts known by the police cry out for further inquiry, and when this is the case it is not reasonable for the police to proceed on the theory that 'ignorance is bliss.' " 3 W. LaFave, Search & Seizure § 8.3(g), at 749 (3d ed. 1996).

Thus, in a case where reason requires further inquiry, the police officer who fails to inquire may not rely upon the apparent authority rule. *People v. Pickens*, 275 Ill. App. 3d 108, 114 (1995). This is such a case.

■ When the police learned that Fay could reach the attic only by passing through defendant's independent living space, the issue of her common authority over the attic, to say the least, became ambiguous. A reasonable person would have questioned whether Fay had the right to enter defendant's apartment at any time to access the attic without giving defendant notice or obtaining his consent. If these officers simply had inquired further, Fay would have revealed that, under ordinary circumstances, she did not have that right. The police then would have known that Fay did not have common authority over the attic. Instead, they proceeded on the unreasonable assumption that, in effect, defendant's landlord could enter defendant's dwelling any time she so desired. Reason demanded that they inquire further, to either confirm or dispel that assumption. Because the police did not do so, we have considered the facts available to them had they made further inquiry. We determine that a reasonable inquiry would have disclosed a lack of common authority. Having failed to make the necessary inquiry, apparent authority is not available as a form of consent.

The State responds that the police reasonably concluded that, although Fay did not have common authority over the second floor, she had a kind of "easement by necessity" that allowed her to cross it to get to the attic. Thus, the State concludes, the need to cross the second floor did not destroy Fay's apparent common authority over the attic.

The State cites no case, and we have found none, in which such an "easement" was recognized under similar facts. Therefore, we cannot accept the argument that such a conclusion was reasonable. In any event, the State misses the point. Even if that conclusion was reasonable, it was no more reasonable than the opposite conclusion. As a result, the circumstances still were at least ambiguous, the police still had a duty to inquire, and they still failed to do so.

To the extent that this affirmance is based upon a rationale not stated by the trial court, a judgment may be sustained on any ground warranted by the record regardless of the reasons relied upon by the trial court. *Pickens*, 275 Ill. App. 3d at 114. The trial court's ruling on the motion to suppress was not against established law or plainly erroneous. See *Pickens*, 275 Ill. App. 3d at 115.

The dissent disregards the ambiguous circumstances and the readily apparent trespass by the officers over and through the tenant's apartment by determining that the officers had a reasonable belief that the landlord had common authority to enter the attic. The dissent's analysis does not address the lack of the landlord's common authority to consent to the traverse of the tenant's apartment and the need for further inquiry because of the ambiguous circumstances.

For these reasons, the order of the circuit court of McHenry County is affirmed.

Affirmed.

RAPP, J., concurs.

JUSTICE THOMAS, dissenting:

I believe that the officers in this case could have reasonably concluded that the defendant's grandmother had apparent common authority over the attic, along with the area necessary to reach the attic. Therefore, I believe that the search was valid. Accordingly, I respectfully dissent.

Before they entered the attic, the police knew the following facts, which are indicative of the officers' reasonable conclusion that the grandmother had common authority over the attic: (1) the grandmother owned the building in question, which merely looked like an old house and not separate apartments; (2) the grandmother told the officers that her grandson "lived upstairs"; (3) the grandmother had personal items stored in the attic; (4) the grandmother had already been in the attic earlier that same day; (5) the second floor to the house had interior access, and there was no lock on the door separating the upstairs from the downstairs; and (6) the door to the attic was

open. Plus, the officers testified that the grandmother led them to the attic herself; although the grandmother testified that she merely directed them, either version fosters the conclusion that her consent apparently was valid. Most significantly, the grandmother never revealed the crucial fact that the attic was part of a separate apartment. Thus, all that the police knew about the attic itself indicated that the grandmother could access it at will.

However, the officers also knew that they could reach the attic only by passing through living quarters that the grandmother had leased to the defendant. I believe that this case creates an issue of first impression as to whether the officers reasonably believed that the grandmother had common authority over the attic, knowing that she would have to go into the kitchen area of the defendant's apartment to access the attic.

It is well established that, although a landlord generally does not have common authority over leased premises, she nevertheless may be authorized to enter the premises for a limited purpose. For example, a landlord may have the contractual right to enter a tenant's apartment to inspect it or make repairs at reasonable times. See *Sedrel*, 184 Ill. App. 3d at 1081. Obviously, such a limited right of access does not entitle the landlord to authorize a valid search of the apartment. See *Sedrel*, 184 Ill. App. 3d at 1080-81. However, it does allow the landlord to permit the police to enter for the same limited purpose. See *United States v. Impink*, 728 F.2d 1228, 1232 (9th Cir. 1984).

The police reasonably concluded that the grandmother had common authority over the attic; therefore, they could reasonably conclude that she also had the right to enter the second floor for the limited purpose of accessing the attic. Indeed, because the attic could be accessed in no other practical manner, no other conclusion made sense. The majority looks at the situation in hindsight to determine that the officers should have made further inquiry. However, I believe that the officers in this case made a reasonable response to the situation facing them at the time, and the fact that a reasonable mistake was made in determining the grandmother's authority to consent does not give rise to an unreasonable search. See W. LaFave, Search & Seizure § 8.3(g), at 745 (3d ed. 1996). The need to briefly traverse the second-floor kitchen did not destroy the grandmother's apparent common authority over the attic. Instead, the need to traverse that area merely supported the officers' reasonable belief that she had common authority to do so in order to enter the attic. Under these circumstances, I would conclude that the search of the attic was constitutionally valid.