THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BARTLETT VOUGHT, Defendant-Appellant.

Second District   No. 2—87—0015

Opinion filed September 15, 1988.—Rehearing denied October 14, 1988.

G. Joseph Weller and Robert C. Cooper, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

Defendant, Bartlett Vought, was convicted of the unlawful possession of 30 or more grams of a controlled substance with intent to deliver and was sentenced to a 10-year term of imprisonment and fined $240,000. On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence obtained as a result of a warrantless entry into his hotel room by a police officer. Defendant also contends, and the State concedes, that in the event his conviction is affirmed on appeal, defendant must receive a credit of $915 toward his fine as a result of time spent in custody between his arrest and sentencing. (*People v. Hare* (1988), 119 Ill. 2d 441, 519

N.E.2d 879.) The State asserts that the officer's entry and subsequent search of defendant's room did not violate the fourth amendment because (1) the search did not exceed the scope of a previous private search by hotel employees; (2) the officer had a good-faith belief that the room was vacant at the time he entered it; (3) the cocaine in the suitcase posed a potential danger to hotel employees; and (4) defendant abandoned any interest in the suitcase in which the contraband was found when he told the officer it did not belong to him. We reverse.

At the hearing of defendant's motion to suppress evidence the parties stipulated that defendant rented room 219 at the Holiday Inn in Itasca from June 21, 1986, through and including June 23, 1986. He arranged and paid for his final day's lodging at some time between 7 a.m. and 1 p.m. on June 23. One of the hotel maids, Anna Olivares, checked room 219 during the morning of June 23 and saw clothes hanging up. As her housekeeping sheet showed that the guest in room 219 was due to check out that day, and the room was still occupied, Olivares decided to clean it after the 1 p.m check-out time. When Olivares returned to the room after 1 p.m. and saw a "do not disturb" sign on the door, she informed her supervisor, Maria Garcia, who knocked on the door, unlocked it after receiving no answer, and told Olivares to clean the room.

After Olivares began to clean the room she noticed a suitcase beside one of the beds. The suitcase was closed, but was not locked, and Olivares opened it. She noticed a white powdery substance inside the suitcase and called in Garcia. Another hotel employee, Richard Limukovic, also entered the room at this time. Limukovic tasted the substance and stated that he believed it was cocaine. Garcia informed the hotel general manager, Karen Morlock, about the discovery of the suitcase and its contents at about 2:45 p.m.

Morlock called the Itasca police department, and Officer Rusty Votava arrived at the hotel a few minutes later. Morlock informed the officer that a maid had found a suitcase in room 219 which might contain illegal drugs and that the room was unoccupied. Morlock had not checked the hotel's guest registry list at that time to determine the occupancy status of the room, and her belief that the room was unoccupied was based upon her conversation with Garcia. Officer Votava did not ask Morlock at this time if she had checked the hotel's records with regard to the occupancy status of room 219, nor did he ask her to do so.

Officer Votava and Morlock entered room 219 at approximately 3 p.m., and the "do not disturb" sign was still on the front door.

Morlock opened the door with a pass key after knocking and receiving no response. The only personal effects in the room were some change and a hotel key on a television stand, scratch paper on top of the television, and the suitcase. Votava was calling the Itasca police department for assistance in securing the room when the defendant walked into the room. When Votava asked if defendant would mind if he opened the suitcase, defendant stated that he would not mind and that the suitcase did not belong to him. Votava then opened the suitcase, which had been closed but unlocked, and discovered contraband subsequently determined to be 799.1 grams of cocaine. Votava placed defendant under arrest.

The trial court denied defendant's motion to suppress and held a bench trial at which the evidence was received by stipulation. The parties stipulated, among other things, that defendant made certain incriminating statements after his arrest; that at about 3:30 p.m. on June 23, Votava gave defendant *Miranda* warnings at the Itasca police station, which defendant stated that he understood and signed a *Miranda* waiver form. Defendant told Votava that he had flown to Chicago with two other men, one of whom he referred to as Alan and the other as Murphy. Alan carried the suitcase on the plane and took it to the Holiday Inn, where it was later moved to defendant's room.

Detective William Simmons of the Metropolitan Enforcement Group and Officer Michael Tellone of the Itasca police department also questioned defendant at about 7:05 p.m. on June 23, 1986. They repeated the *Miranda* warnings, and defendant signed another waiver form. Defendant stated that he received the cocaine from an individual in Florida and that he and two other men agreed to take the cocaine to Chicago by airplane and to deliver it to an individual in the Chicago area. Defendant and the others took a flight to Chicago on June 21, during which the cocaine was taped to their legs. The delivery fell through, and defendant was planning to return to Florida with the cocaine when Officer Votava arrested him.

On June 24, 1986, during the early morning hours, while Officer Votava transferred defendant to the Du Page County jail, defendant apologized for lying to Votava the previous day, stating that the recent attempted drug transaction was his first effort in retailing cocaine and it did not work out.

Defendant renewed the suppression motion at the stipulated bench trial, and it was once again denied. The trial judge found defendant guilty, imposed sentence, and this appeal followed.

■ It is undisputed by the parties that defendant was a regis-

tered guest in room 219 on June 23, 1986. The fourth amendment constraints against unreasonable searches and seizures apply to guests in hotel rooms, just as they apply to tenants in homes and residents of boarding houses. (*Stoner v. California* (1964), 376 U.S. 483, 490, 11 L. Ed. 2d 856, 861, 84 S. Ct. 889, 893.) In *Stoner*, a hotel desk clerk advised police officers that a robbery suspect was staying in the hotel but was not in his room at that time. The officers asked the clerk for permission to enter the suspect's room, and the clerk consented. The court held that the clerk had no authority to consent to the search and stated that the right of hotel guests to be protected from unreasonable searches and seizures "would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel." (*Stoner*, 376 U.S. at 490, 11 L. Ed. 2d at 861, 84 S. Ct. at 893.) Under *Stoner*, a hotel guest receives the same constitutional protection against unreasonable searches and seizures in his room that an occupant of a more permanent type of residence receives with regard to his house or apartment. *People v. Wilson* (1980), 86 Ill. App. 3d 637, 640, 408 N.E.2d 988.

■ The State argues, however, that fourth amendment concerns are not implicated in the present case because the cocaine was initially discovered during the course of a private search by hotel employees, and the subsequent search by Officer Votava did not exceed the scope of that private search. The State relies primarily upon *United States v. Jacobsen* (1984), 466 U.S. 109, 80 L. Ed. 2d 85, 104 S. Ct. 1652, in which employees of a private freight company examined the contents of a damaged package in which they found a 10-inch long tube which was covered by crumpled pieces of newspaper. The tube contained four plastic bags, one of which contained a white powdery substance. The employees notified the Drug Enforcement Administration about the package and, before the first DEA agent arrived, put the plastic bags inside the tube which was then returned to the box. The agent retrieved the bag with the powdery substance, field tested a portion of the contents, and learned that the bag contained cocaine. The court held that the actions of the agents did not violate the fourth amendment and stated that "the federal agents did not infringe any constitutionally protected privacy interest that had not already been frustrated as a result of private conduct." *Jacobsen*, 466 U.S. at 126, 80 L. Ed. 2d at 102, 104 S. Ct. at 1663.

The State's reliance upon *Jacobsen* is misplaced. The court stated in a footnote to that opinion that the case was distinguishable from one in which the police simply learn from a private individual that there is contraband inside a container, seize the container from its

owner, and then conduct a warrantless search. The court stated that under such circumstances the search would be unconstitutional. (*Jacobsen*, 466 U.S. at 120 n.17, 80 L. Ed. 2d at 98 n.17, 104 S. Ct. at 1660 n.17.) In the case at bar, unlike *Jacobsen*, the contraband was seized from the defendant. The United States Supreme Court recognized in *Jacobsen* that, under such circumstances, the defendant retains a legitimate expectation of privacy with respect to the container, even if a private individual has seen contraband inside the container. The State's argument must therefore fail.

Another factor which distinguishes the present case from *Jacobsen* is the fact that Officer Votava made a warrantless entry into defendant's hotel room in order to seize the contraband. The *Stoner* holding establishes that hotel guests are entitled to the same fourth amendment protections as occupants of residences of a more permanent nature. (*Stoner v. California* (1964), 376 U.S. 483, 490, 11 L. Ed. 2d 856, 861, 84 S. Ct. 889, 893.) Commenting upon *Jacobsen*, Professor LaFave states, "it is to be doubted that if a private person searched the premises of another and then reported to the police what he had found (instead of removing the evidence and handing it over to the police), that the police could then make a warrantless entry of those premises and seize the named evidence." 1 W. LaFave, *Search and Seizure* §1.8(b), at 188 (1987).

We agree with Professor LaFave's conclusion. The right of an individual to be free from governmental intrusions into his home lies at the core of the fourth amendment. (*Payton v. New York* (1980), 445 U.S. 573, 589-90, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382.) Warrantless entries into residences are *per se* unreasonable unless exigent circumstances are present. (*Payton*, 445 U.S. at 590, 63 L. Ed. 2d at 653, 100 S. Ct. at 1382.) The State's position that, absent exigent circumstances, a police officer may make a warrantless entry into a hotel room or other residence merely because a private individual has seen contraband inside the residence is squarely at odds with *Payton* and would largely eviscerate the warrant requirement of the fourth amendment. We reject the State's contention that Officer Votava's warrantless entry and search were proper because of the prior private search by hotel employees.

■ The State next contends that the trial court properly refrained from applying the exclusionary rule to suppress the evidence in question because Officer Votava had a reasonable, good-faith belief that defendant's hotel room was vacant and that the general manager of the hotel, Karen Morlock, had authority to consent to the search. It is clear that a hotel manager may validly consent to the

search of a vacant room. (*United States v. Akin* (7th Cir. 1977), 562 F.2d 459, 464.) The State asserts that the good-faith doctrine espoused by the United States Supreme Court in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, should be applied here because of Morlock's apparent authority to consent to the entry and search.

In *Leon*, the court concluded that evidence seized by officers reasonably relying upon a warrant issued by a detached and neutral magistrate is admissible even if the warrant is later determined to be invalid. (*Leon*, 468 U.S. at 913, 82 L. Ed. 2d at 692, 104 S. Ct. at 3415.) The court stated that punishing police officers for errors made by magistrates "cannot logically contribute to the deterrence of Fourth Amendment violations." 468 U.S. at 921, 82 L. Ed. 2d at 697, 104 S. Ct. at 3419.

The State argues that the *Leon* doctrine should be extended to situations in which a police officer makes a warrantless entry into a private residence based upon a reasonable, but mistaken, good-faith belief that another person who consented to the entry had the authority to do so. We find no basis to do so and note that in *Leon* the police officers did have a search warrant that had been issued by a neutral and detached magistrate. In *Johnson v. United States* (1948), 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367, Mr. Justice Jackson, writing for the majority, made the following statement concerning the rationale behind the fourth amendment warrant requirement:

> "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. \*\*\* When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." (*Johnson*, 333 U.S. at 13-14, 92 L. Ed. at 440, 68 S. Ct. at 369.)

In accord with this policy, as we have previously noted, the United States Supreme Court has held that warrantless entries into private

premises by law enforcement officials are *per se* unreasonable unless exigent circumstances are present. *Payton v. New York* (1980), 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382.

We consider that *Payton* is consistent with *Leon* where the court noted that the primary purpose of the exclusionary rule is to deter unlawful police conduct and stated that when an officer has relied in good faith upon a search warrant obtained from a judge or a magistrate, and has acted within its scope, there is no improper police conduct to deter. (*Leon*, 468 U.S. at 920-21, 82 L. Ed. 2d at 697, 104 S. Ct. at 3419.) The only improper conduct claimed in *Leon* was the decision of the judge to issue a search warrant; by contrast, a decision to make a warrantless entry and search is made by the police themselves. The purpose of the rule set forth in *Payton* is to deter police officers from making such a decision unless exigent circumstances are present, and, unlike the situation in *Leon*, the rule clearly has an effect upon police conduct. We reject the State's argument that the good-faith doctrine in *Leon* is applicable in the context of this case (see *People v. Ross* (1985), 133 Ill. App. 3d 66, 73-74, 478 N.E.2d 575) and conclude, in accordance with *Payton*, that Officer Votava's warrantless entry into room 219 must be considered unreasonable unless exigent circumstances were present. Our conclusion is consistent with decisions in prior Illinois cases rejecting the argument that warrantless entries and searches may be upheld if the party who consented to the entry had apparent authority to do so but lacked actual authority. (See *People v. Miller* (1968), 40 Ill. 2d 154, 157-58, 238 N.E.2d 407, 409; *People v. Bochniak* (1981), 93 Ill. App. 3d 575, 577, 417 N.E.2d 722, 724.) Nor would the good-faith exception to the exclusionary rule recently enacted by the Illinois General Assembly prevent suppression of the evidence in this case, as it was not seized pursuant to a warrant issued by a judge or pursuant to a warrantless search incident to an arrest for violation of a statute or ordinance which was subsequently invalidated. See Ill. Rev. Stat. 1987, ch. 38, pars. 114—12(b)(1), (b)(2)(i), (b)(2)(ii).

The State does claim that exigent circumstances existed, asserting that the mere presence of cocaine in room 219 created an emergency situation because of the potential danger to hotel employees, citing *People v. Meddows* (1981), 100 Ill. App. 3d 576, 427 N.E.2d 219, a case which is readily distinguishable from the case at bar. In *Meddows*, the court held that a warrantless search of a house trailer was proper when one of defendant's relatives informed police that there was dynamite inside the trailer. (*Meddows*, 100 Ill. App. 3d at 581, 427 N.E.2d at 222.) Defendant lived in the trailer with his wife

and stepson, and the police had reason to believe several children were in the trailer at the time. The court stated that the purpose of the search was to prevent a potential disaster and held that the search was justified because it fell within the emergency exception to the warrant requirement. *Meddows*, 100 Ill. App. 3d at 581, 427 N.E.2d at 222.

In *Meddows*, the mere presence of dynamite in the house trailer posed an immediate danger of substantial harm to the persons inside the trailer and, potentially, to others as well. The presence of cocaine in a suitcase in room 219 did not, by itself, pose an immediate danger to anyone. In *United States v. Costa* (D.D.C. 1973), 356 F. Supp. 606, the court rejected the argument that the mere presence of narcotics inside a hotel room is sufficient to justify a warrantless entry and search on the basis of exigent circumstances, stating, "Narcotics are dangerous but passive *per se*. They posed no *immediate* danger to the community or the police." (Emphasis in original.) (*Costa*, 356 F. Supp. at 611.) In the case at bar, any potential danger to hotel employees could have been averted by locking the door to room 219 and preventing entry while a search warrant was sought. We do not agree that the warrantless entry and search can be justified on the basis that a potential emergency existed.

■ Finally, the State asserts that the cocaine seized from the suitcase in room 219 was admissible in evidence because defendant lost any expectation of privacy by telling Officer Votava to go ahead and look inside the suitcase and that it did not belong to defendant. (See *People v. Hanlon* (1985), 137 Ill. App. 3d 305, 314, 483 N.E.2d 1332, 1338.) Whether this statement is considered an abandonment of defendant's interest in the suitcase, as the State argues, or consent to the subsequent search, it must be determined whether the cocaine was the fruit of Officer Votava's illegal entry into the hotel room. Under the exclusionary rule, evidence obtained during or as a direct result of an unlawful entry is generally inadmissible. (*Wong Sun v. United States* (1963), 371 U.S. 471, 485, 9 L. Ed. 2d 441, 454, 83 S. Ct. 407, 416.) Evidence will not be considered "fruit of the poisonous tree" simply because it would not have been discovered but for the illegal actions of the police. (*Wong Sun*, 371 U.S. at 487-88, 9 L. Ed. 2d at 455, 83 S. Ct. at 417.) Instead, the determinative question is whether the evidence has been discovered by exploitation of that illegality or by means sufficiently distinguishable to be purged of the primary taint. 371 U.S. at 488, 9 L. Ed. 2d at 455, 83 S. Ct. at 417.

In *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95

S. Ct. 2254, the United States Supreme Court set forth factors for determining whether inculpatory statements by a defendant following an illegal arrest are sufficiently purged of the taint of the arrest to be admitted into evidence. These factors are (1) whether *Miranda* warnings were given, (2) the amount of time that elapsed between the arrest and the statements, (3) the presence of any intervening circumstances, and (4) the purpose and flagrancy of the police misconduct. (*Brown*, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.) Although *Brown* involved the admissibility of a confession following an illegal arrest, we consider the factors to be relevant in determining whether defendant's consent to the search or abandonment of the suitcase sufficiently attenuated the taint of the illegal entry. See *People v. Odom* (1980), 83 Ill. App. 3d 1022, 1028, 404 N.E. 2d 997, 1002.

■ No *Miranda* warnings were given in the case at bar, nor was defendant advised that he did not have to consent to the search. The amount of time between the illegal entry and the discovery of the cocaine was very brief; Officer Votava found the cocaine within minutes of the illegal entry. There were no intervening circumstances between the illegal entry and the abandonment of the suitcase or consent to the search which would indicate that this was an intervening act of a free will sufficient to dissipate the taint of the illegal entry. (*Wong Sun v. United States* (1963), 371 U.S. 471, 486, 9 L. Ed. 2d 441, 454, 83 S. Ct. 407, 416-17.) Although the police misconduct was not flagrant, due to Officer Votava's belief that room 219 was vacant, the other factors suggest that defendant's consent to the search or abandonment of the suitcase did not purge the primary taint of the illegal entry. Compare *People v. Hanlon* (1985), 137 Ill. App. 3d 305, 313-14, 483 N.E.2d 1332.

■ We must also consider whether the inculpatory statements made by defendant should have been suppressed. Utilizing the *Brown* factors, we note first that defendant did receive *Miranda* warnings before making the statements and that they were made within a relatively short period of time after the illegal entry. The first statements were made approximately 30 minutes after the entry; the next set of statements was made about four hours after the entry; and defendant's apology to Officer Votava for lying occurred within 24 hours of the entry. There were no intervening circumstances between the entry and the statements to indicate that they were sufficiently an act of free will to purge the primary taint of the illegal invasion. While we have noted that the police misconduct was not flagrant, the nature of that misconduct must be considered as well. (*People v. Rob-*

*bins* (1977), 54 Ill. App. 3d 298, 305, 369 N.E.2d 577, 581.) Defendant made the inculpatory statements after Officer Votava found the cocaine in his hotel room. Confronting a suspect with illegally seized evidence under circumstances such as these tends to induce a confession by demonstrating that it is futile to remain silent. (*Robbins*, 54 Ill. App. 3d at 305, 369 N.E.2d at 581.) As in *Robbins*, it is most probable that defendant confessed only because he was caught redhanded. We conclude that defendant's confessions were not sufficiently an act of free will to purge the primary taint of the illegal entry. *Wong Sun v. United States* (1963), 371 U.S. 471, 486, 9 L. Ed. 2d 441, 454, 83 S. Ct. 407, 416-17; *People v. Koniecki* (1985), 135 Ill. App. 3d 394, 401-03, 481 N.E.2d 973.

Once the defendant establishes the causal connection between the primary illegality and the alleged fruits of the illegality, the State has the burden of demonstrating by clear and convincing evidence that the challenged evidence was obtained by means sufficiently distinguishable to be purged of the primary taint. (*People v. Robbins* (1977), 54 Ill. App. 3d 298, 305, 369 N.E.2d 577, 581.) The causal connection between Officer Votava's illegal entry and both the cocaine seized from the hotel room and defendant's inculpatory statements is clear, and the State failed to demonstrate that this evidence was obtained by means sufficiently distinguishable to be purged of the primary taint. We conclude that both the cocaine and the defendant's inculpatory statements should have been suppressed. Defendant's conviction must be reversed and the cause remanded to the circuit court for a new trial.

Reversed and remanded.

REINHARD and UNVERZAGT, JJ., concur.