THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARVIN STEINBERG, Defendant-Appellant.

Second District    No. 2—92—1164

Opinion filed April 22, 1994.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, and Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, Stephen E. Norris, Kendra S. Mitchell, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Marvin Steinberg, was found guilty in a jury trial in the circuit court of Du Page County of one count of controlled substance trafficking (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1401.1 (now 720 ILCS 570/401.1 (West 1992))) and two counts of unlawful delivery of 15 grams or more but less than 100 grams of a substance containing cocaine (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1401(a)(2) (now 720 ILCS 570/401(a)(2) (West 1992))). Defendant received concurrent sentences of 25 years' imprisonment on the trafficking count and 20 years' imprisonment on one count of unlawful delivery. Defendant

subsequently filed a timely appeal arguing that the trial court erred in denying his motion to suppress evidence recovered from a rented storage shed in Tennessee. The sole issue on appeal is whether defendant's wife, Shirley Steinberg, had authority to consent to the search of the rented storage shed.

The facts relevant to this appeal are as follows. Pursuant to an undercover investigation by the Du Page Metropolitan Enforcement Group (DuMEG) and defendant's arrest on the charges underlying the present case, DuMEG agents obtained information that defendant kept quantities of cocaine in rented storage sheds. On October 9, 1991, DuMEG agent Larry Wiess travelled to Tennessee and, along with other law enforcement personnel, interviewed Mrs. Steinberg. Mrs. Steinberg eventually gave written consent for the search of a rented storage shed. The police conducted a search of the shed and discovered quantities of cocaine and items of drug paraphernalia.

At the time of defendant's arrest, and the search of the storage shed, both he and his wife resided in Paris, Tennessee. The rented storage shed in question was located 15 to 20 miles away in Buchanan, Tennessee, and it was leased in defendant's name only.

At a hearing on the motion to suppress, Mrs. Steinberg testified that she had never been given a key to the facility. She stated further that she had been inside the shed on only one occasion, accompanied by her cousin and defendant, for the purpose of storing her daughters' winter clothing. According to Mrs. Steinberg, defendant had said that the stuff in the storage shed was his and that "nobody had any right to go in there."

Defendant testified that the storage shed was his, and his wife had only been to it one time to store some of his daughters' clothing. Defendant stated that he never gave his wife a key to the shed, and she did not have permission to enter the shed.

Agent Wiess testified that he met with Mrs. Steinberg at a police station in Tennessee on October 9, 1991. Wiess asked her if defendant had some cocaine in a storage shed in Paris, Tennessee. She admitted that he did and further stated that defendant had called her from jail, following his arrest on the present charges, and asked her to go to the shed and destroy the cocaine. Mrs. Steinberg said that she had not gone there because she was afraid to. Wiess testified that he asked Mrs. Steinberg for permission to go to the shed and recover the cocaine, and she said yes and subsequently signed a written consent form. According to Wiess, Mrs. Steinberg indicated that she had been to the shed previously to store personal belongings including a bed, some couch cushions, coolers, and personal income tax items. Wiess asked Mrs. Steinberg if she had a key to the shed. She said

that if she had a key she had no idea where it would be. Instead, she gave the officers permission to cut off the lock. According to Wiess, Mrs. Steinberg told them that cocaine was located inside a cushion in the shed, and a subsequent search verified this information.

Agent Stephen Thomas Page of the 24th Judicial District Drug Task Force in Tennessee also participated in the October 9 interview with Mrs. Steinberg. Page testified that Mrs. Steinberg provided the correct number of the storage shed and written consent to search it. When asked about the shed's contents, she stated that some of the items inside were hers and some belonged to defendant. According to Page, Mrs. Steinberg did say that she had keys to the storage shed, but she did not know which one it was and said that they should go ahead and cut off the lock. Page also verified that the cocaine was recovered from inside a cushion found in the shed.

The trial court found that both Wiess and Page were credible witnesses, and, although there were some discrepancies in their testimony, there was not the type or degree of impeachment that would render their testimony incredible. The trial court indicated that it believed the version of events related by Wiess and Page over that of defendant and his wife. The court further found that consent had been voluntarily given and that Mrs. Steinberg had both actual and apparent authority to consent to the search of the storage shed. Defendant's motion to suppress was accordingly denied.

■ The sole issue raised by defendant on appeal is whether the trial court erred in finding that Mrs. Steinberg had authority, actual or apparent, to consent to the search of the storage shed. Both parties recognize that the law of the forum State, Illinois, controls in this case, despite the fact that the search occurred in Tennessee. See *People v. DeMorrow* (1974), 59 Ill. 2d 352, 354-55.

■ A reviewing court will not reverse a trial court's findings on a defendant's motion to quash and suppress unless it is determined to be clearly erroneous. (*People v. Henderson* (1990), 142 Ill. 2d 258, 293; *People v. Janis* (1990), 139 Ill. 2d 300, 308; *People v. Foskey* (1990), 136 Ill. 2d 66, 76.) The focus of the trial court's ruling was on the consent exception to the general prohibition against warrantless searches. A search of property, without a warrant and without probable cause, but with proper consent voluntarily given is valid under the fourth amendment. *Illinois v. Rodriguez* (1990), 497 U.S. 177, 181, 111 L. Ed. 2d 148, 156, 110 S. Ct. 2793, 2797; *United States v. Matlock* (1974), 415 U.S. 164, 165-66, 39 L. Ed. 2d 242, 246, 94 S. Ct. 988, 990.

The law provides that a third party who possesses common authority over the premises or effects in question may give valid consent to search them. (See *Matlock*, 415 U.S. at 169-71, 39 L. Ed. 2d

at 248-50, 94 S. Ct. at 992-93.) Common authority is not implied merely from property interests but rests upon mutual use of the property by persons generally having joint access or control for most purposes. (*Matlock*, 415 U.S. at 171 n.7, 39 L. Ed. 2d at 250 n.7, 94 S. Ct. at 993 n.7; see also *Foskey*, 136 Ill. 2d at 87; *People v. Bochniak* (1981), 93 Ill. App. 3d 575, 576-77.) Anyone with common authority over property has the right to permit inspection and the others have assumed the risk that one of their number might permit the common area to be searched. (*Matlock*, 415 U.S. at 171 n.7, 39 L. Ed. 2d at 250 n.7, 94 S. Ct. at 993 n.7; see also *Foskey*, 136 Ill. 2d at 87; *Bochniak*, 93 Ill. App. 3d at 576.) Common authority typically arises from a marital or familial relationship or from a situation involving cohabitants. (See, *e.g.*, *Foskey*, 136 Ill. 2d 66; *People v. Heflin* (1978), 71 Ill. 2d 525; *People v. Palmer* (1962), 26 Ill. 2d 464; *People v. Smith* (1969), 108 Ill. App. 2d 172.) Common authority has also been recognized, however, in a situation where there is joint use of one individual's property. See *Frazier v. Cupp* (1969), 394 U.S. 731, 22 L. Ed. 2d 684, 89 S. Ct. 1420.

Defendant argues that his wife did not have common authority over the shed because she did not sign the lease for the facility nor did she have a key to it. Common authority, however, does not require an ownership interest (see *Matlock*, 415 U.S. at 171 n.7, 39 L. Ed. 2d at 250 n.7, 94 S. Ct. at 993 n.7; *Frazier*, 394 U.S. at 740, 22 L. Ed. 2d at 693-94, 89 S. Ct. at 1425; *Bochniak*, 93 Ill. App. 3d at 576), nor is possession of a key to subject property the touchstone of a determination of common authority (see *Bochniak*, 93 Ill. App. 3d at 576-77; *People v. Weinstein* (1968), 105 Ill. App. 2d 1, 6). Rather the question focuses on whether there is mutual use of the property and the extent of that use.

It has been recognized, with respect to the search of residences, that a mere storing of personal property will not create the authority to give general consent to search the home. (See *People v. Taylor* (1975), 31 Ill. App. 3d 576, 579-80.) With respect to a home, there is a marked distinction between the authority of an occupant, even one without an ownership interest, and that of an individual with a right to enter for a limited purpose. This merely reflects upon the degree and type of use relative to that particular type of property; where a site is used primarily as a residence, occupants will generally have greater authority than individuals merely using the space for storage of personal property.

■ The site of the search in the present case, however, was not a residence but a storage facility. Thus, because it found the testimony of the officers to be credible, and concluded that Mrs. Steinberg used

the shed to store a substantial amount of property owned by her personally and by her and defendant jointly, the trial court could have reasonably concluded that there was common authority over the property based upon mutual use. This conclusion of common authority is further supported by Mrs. Steinberg's alleged statement to police that defendant had asked her to go to the shed and destroy the cocaine stored there.

■ The trial court also concluded that the search of the shed could be supported under the principle of apparent authority to consent as discussed by the United States Supreme Court in *Rodriguez* (497 U.S. 177, 111 L. Ed. 2d 148, 110 S. Ct. 2793). *Rodriguez* held that a warrantless entry based upon the consent of a person having apparent, though not actual, authority to give such consent is lawful if, at the time of the entry, the police reasonably believe that person to have common authority over the premises. (*Rodriguez*, 497 U.S. at 186-89, 111 L. Ed. 2d at 160-61, 110 S. Ct. at 2800-01.) Although a number of cases decided in Illinois prior to *Rodriguez*, including this court's decision in *People v. Harris* (1990), 199 Ill. App. 3d 1008, have held consent by one with apparent, but not actual, authority to be invalid, we recognize that Illinois courts are generally guided by the pronouncements of the United States Supreme Court with respect to issues of search and seizure (see *People v. Tisler* (1984), 103 Ill. 2d 226, 243-45). We, therefore, adopt the principles set out in *Rodriguez*. This is consistent with the approach taken by the Illinois Supreme Court in *Henderson* regarding consent to enter a dwelling to effectuate a warrantless arrest:

> "We now hold that, when a court is deciding whether consent was given (not whether that consent was voluntary), the circumstances must have been such that the police could have reasonably believed they had been given consent to enter. (*Cf.* [*Rodriguez*, 497 U.S. 177, 111 L. Ed. 2d 148, 110 S. Ct. 2793] (search of home valid if police given consent to enter by one they reasonably believed had authority to consent).) This test is consistent with the fourth amendment's proscription 'against unreasonable searches and seizures.' See 3 W. LaFave, Search & Seizure § 8.1(b), at 156-59 (2d ed. 1987)." *Henderson*, 142 Ill. 2d at 299.

Given the marital relationship between defendant and Mrs. Steinberg, the testimony that she used the shed to store a variety of personal effects, and the testimony that defendant had explicitly asked her to go to the shed and destroy evidence located there, we determine that the trial court did not err in finding that Mrs. Steinberg had both actual and apparent authority to consent to the search of the rented storage shed.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and QUETSCH, JJ., concur.