(No. 75490.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DELORES JAMES, Appellant.

*Opinion filed December 22, 1994.*

HEIPLE, J., dissenting.

Daniel D. Yuhas, Deputy Defender, and Karen Munoz, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Thomas J. Difanis, State's Attorney, of Urbana (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen and Martha E. Gillis, Assistant Attorneys General, of Chicago, of counsel), for the People.

Tom Leahy and Dennis A. Rendleman, of Springfield

(John Donahue and Elaine Odeh, of Donahue, Sowa & Bugos, of Lisle, of counsel, and Liam Dixon, law clerk), for *amicus curiae* Illinois State Bar Association.

JUSTICE McMORROW delivered the opinion of the court:

The instant appeal presents the question of whether it is reasonable for a police officer to believe that he has been granted the right to search a closed purse that he finds on the passenger seat in an automobile, where the driver of the car, but not the passenger, has consented to a search of the vehicle.

In April 1992, the defendant, Delores James, was a passenger in an automobile that was stopped by officers of the Urbana police department. The officers directed the driver and the passengers to step out of the car. When defendant exited the vehicle, she left her purse on the front, passenger-side seat of the car. One of the officers then escorted defendant away from the automobile.

Although defendant was not aware of it, the driver of the car agreed to a police search of the vehicle. During this search, the officers opened and looked into defendant's purse, where they found cocaine. She was arrested and charged with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1992)).

Defendant filed a motion to suppress the evidence found by police officers during their search of her purse. She argued that she had not consented to the search and that the driver lacked the authority to consent to a search of her purse. Following an evidentiary hearing, the trial court allowed the defendant's motion to suppress. The appellate court reversed the trial court's ruling (242 Ill. App. 3d 675), with one justice dissenting (242 Ill. App. 3d at 677-79 (Cook, J., dissenting)). We allowed the defendant's petition for leave to appeal (145 Ill. 2d R. 315(a)).

# I

At the trial court's hearing with respect to defendant's motion to suppress, the defendant testified that on April 1, 1992, at approximately 7 p.m., she was a passenger in a vehicle being driven by Ruth Boolman. Defendant was sitting in the front passenger seat of the car. A third passenger, Shirley James, was in the back seat of the car. They were stopped by an Urbana police department squad car. One officer approached the driver's side of the car, another officer came to the passenger side, and a third officer went to the rear of the vehicle.

The officer near the driver, Boolman, spoke to her briefly. The officers then asked defendant and Shirley James to exit the car and they complied. One of the officers "walked [defendant] off a good piece by a tree" away from where the others were located. Defendant could not hear the conversations between the police officers and the other occupants of the vehicle. A short while later, one of the other officers approached defendant and asked her about her purse. She described the purse as a "little brown wallet with just a snap on it." Defendant had left the purse on the front passenger seat in the car. She stated that the officer told her he had looked in the purse and removed "a pipe and the bag and the tie." The officers never asked her permission to look inside her purse. Defendant admitted that the items found inside the purse belonged to her.

Officer Troy Phillips of the Urbana police department testified that on the night of the incident, he and his partner stopped a vehicle because it had no rear license plate and because a document indicating that a license had been applied for was torn and illegible. When the officers stopped the car, they examined the document and found it to be in order.

Officer Phillips testified that there were three women passengers in the car and two small children.

He spoke to the driver, Boolman, after she got out of the automobile. Officer Phillips explained to Boolman that they were working a special detail in the area because it was a "high traffic drug area." He asked Boolman if she had any contraband such as weapons or drugs on her person, and she said that she did not. She agreed to a search of her person, which produced no drugs or contraband.

Officer Phillips then asked Boolman if he could search her car, advising her that he was looking for drugs or weapons. Boolman consented to a search of the automobile. Officer Phillips stated that all of the passengers had exited the car before he searched it. During the search, he noticed a purse on the front seat. He opened the purse and found drug paraphernalia inside it.

Officer Phillips stated on cross-examination that when Boolman consented to the search of her vehicle, she was standing behind her car, in between her own vehicle and the squad car. The officer stated that he believed the other passengers were still in the vehicle at the time he sought Boolman's consent. After Boolman consented to the search, Officer Phillips asked the passengers to step out of the car. The officer admitted that he did not tell the passengers that he was going to search the vehicle.

Based on this testimony, the trial court allowed the defendant's motion to suppress the evidence taken from her purse. In its oral pronouncements, the trial court acknowledged that the officers had lawfully stopped the Boolman vehicle in order to check the validity of its license plates. The trial court also found no impropriety in Officer Phillips' request that Boolman permit him to search the vehicle.

With respect to Officer Phillips' search of the defendant's purse, however, the trial court found it sig-

nificant that the purse did not belong to Boolman, but belonged to the defendant. The trial court further found that defendant had not consented to the officer's search of the purse and that she "had no idea that car was going to be searched." The trial court observed that "where there is more than one person in the car, that would lead a person to presume that perhaps an article that was found on the passenger seat, which is somewhere other than where the owner/driver had been located, that it seems to me at the very least some reasonable inquiry as to whom that property belongs to would be necessary." The trial court noted that the officers were well aware that there were passengers in the vehicle, and observed that the officers found the purse "where one of those other persons who has not given consent to search the car or container was seated." The trial court held that the defendant "didn't abandon [her purse] under the circumstances." The trial court allowed the defendant's motion to suppress.

The State appealed from the trial court's ruling, arguing that the driver's consent to search the automobile reasonably included the contents of the purse found on the front passenger seat of the vehicle. The appellate court agreed and reversed the trial court's allowance of the defendant's motion to suppress. The appellate court reasoned that "driver consent to search for drugs extends to closed containers *** which may belong to others who have exited the vehicle." (Emphasis omitted.) (242 Ill. App. 3d at 676.) Indeed, the appellate court "ponder[ed] how the searching officers [could] distinguish between ownership of the various containers in the vehicle" and noted that "[i]n the search process, such split-second decisions are likely given little thought." 242 Ill. App. 3d at 676.

The appellate court also observed that a "third party may give legally sufficient consent for a search if he has

actual authority over the property shared in common with the defendant. [Citation.]" (242 Ill. App. 3d at 676.) According to the appellate court, "[b]y allowing the driver to exercise authority over a vehicle, a defendant assumes the risk that the driver will allow someone to look inside it. [Citations.]" (242 Ill. App. 3d at 676-77.) The court concluded that it could find "no justifiable reason to limit the effect of driver consent to search where a passenger aware or unaware of the consent to search leaves a container in the automobile." (242 Ill. App. 3d at 677.) The appellate court held that, when the driver of a vehicle consents to a police officer's search of the car for narcotics, it is reasonable for the police officer to believe that the driver's consent to search the vehicle also extends to a search of a closed purse left in the vehicle by a passenger.

One justice dissented from this disposition. This dissenting justice believed that defendant had a reasonable expectation of privacy in her purse, which was closed when she left it in the automobile. (242 Ill. App. 3d at 677 (Cook, J., dissenting).) The dissent noted that a police officer is "not always entitled to accept a person's *** consent to search personal property." (242 Ill. App. 3d at 678, citing *Illinois v. Rodriguez* (1990), 497 U.S. 177, 188-89, 111 L. Ed. 2d 148, 161, 110 S. Ct. 2793, 2801.) The dissenting justice concluded that the trial court's factual findings were not against the manifest weight of the evidence and that the cases cited by the majority were distinguishable and inapposite. 242 Ill. App. 3d at 678.

## II

Defendant argues that the trial court's suppression of the evidence taken from her purse was correct and should be upheld by this court. Defendant contends that Boolman's consent to Officer Phillips' search of the automobile did not justify his search of defendant's

purse. Defendant claims that Boolman did not have the authority to consent to a search of defendant's purse. Defendant notes that under United States Supreme Court precedent, a police officer must make an objectively reasonable determination of whether a person has the apparent authority to consent to a search. (*Illinois v. Rodriguez* (1990), 497 U.S. 177, 111 L. Ed. 2d 148, 110 S. Ct. 2793.) The defendant asserts that other Supreme Court precedent is factually distinguishable from the instant cause (*Florida v. Jimeno* (1991), 500 U.S. 248, 114 L. Ed. 2d 297, 111 S. Ct. 1801) and that decisions from other jurisdictions support her position (*United States v. Welch* (9th Cir. 1993), 4 F.3d 761; *People v. McMillan* (Colo. App. 1993), 870 P.2d 493; *People v. Suazo* (1993), 133 N.J. 315, 627 A.2d 1074). The defendant argues that the appellate court's decision did not take into account the factual findings made by the trial court, all of which were fully supported in the record.

The State responds that although the trial court's factual findings should be reversed only if manifestly erroneous, the trial court's legal determination regarding the reasonableness of the search is subject to *de novo* review. The State emphasizes that there is a lesser privacy interest in a vehicle than there is in a private dwelling and asserts that the Supreme Court "has accorded automobiles fewer constitutional protections than other non-mobile entities." The State contends that Supreme Court precedent supports the appellate court's ruling, citing *Jimeno*, 500 U.S. 248, 114 L. Ed. 2d 297, 111 S. Ct. 1801, and *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157.

The State suggests that the "fact that Officer Phillips may have incorrectly assumed that the purse belonged to the driver of the car is not a factor relevant to a Fourth Amendment analysis." The State relies upon the apparent authority rule enunciated by the Supreme

Court in *Rodriguez*, 497 U.S. 177, 111 L. Ed. 2d 148, 110 S. Ct. 2793. On this basis, the State contends that the driver of the vehicle, Boolman, had the apparent authority to consent to a search of defendant's purse. The State asserts that defendant assumed the risk that the driver of the automobile in which she was riding would agree to a police search of the vehicle and its contents, including defendant's purse. The State argues that it would be impractical to require police officers to "inquire of all of the occupants of an automobile whether they consent to the search of their belongings, and then sort out and classify all of those belongings."

The Illinois State Bar Association, as *amicus curiae*, agrees with the position advocated by the defendant. The Association contends that the appellate court's decision should be reversed as an improvident erosion of fourth amendment rights.

### III

Generally, a trial court's ruling with respect to a motion to suppress evidence is subject to reversal only if manifestly erroneous. *De novo* review by this court is appropriate "[w]hen neither the facts nor the credibility of witnesses is questioned ***. [Citations.]" (*People v. Foskey* (1990), 136 Ill. 2d 66, 76; see also *People v. Smith* (1992), 152 Ill. 2d 229, 251; *In re D.G.* (1991), 144 Ill. 2d 404, 408-09.) The State urges that we apply the standard of review set forth in *Wanless v. Rothballer* (1986), 115 Ill. 2d 158. However, that case pertained to a review of whether the evidence proved actual malice in a libel suit, and is therefore inapposite to the instant cause. Because the testimony provided by defendant and Officer Phillips was not wholly consistent or uncontradictory, we find the manifest error standard of review is applicable in the present cause.

Under the fourth amendment to the United States Constitution, the "right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause *** and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., amend. IV.) The fundamental purpose of the fourth amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings. (*Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 342.) The amendment seeks to balance and accommodate the " 'often opposing interests' " of " 'safeguard[ing] citizens from rash and unreasonable interferences with privacy' " and yet accord " 'fair leeway for enforcing the law in the community's protection.' [Citation.]" (*Dunaway v. New York* (1979), 442 U.S. 200, 208, 60 L. Ed. 2d 824, 833, 99 S. Ct. 2248, 2254.) The principles of the fourth amendment are applicable to the States through the due process clause of the fourteenth amendment, since the right to be free from arbitrary government intrusion is basic to a free society and implicit in the concept of ordered liberty. *Stefanelli v. Minard* (1951), 342 U.S. 117, 119, 96 L. Ed. 138, 141, 72 S. Ct. 118, 119-20.

Initially, we note that general principles of fourth amendment jurisprudence provide no validity for the law enforcement officers' actions in the case presently before us. The amendment explicitly requires that officers obtain a warrant, supported by probable cause, before they may search persons or property. (See, *e.g.*, *Katz v. United States* (1967), 389 U.S. 347, 356-57, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514.) The record does not show that Officer Phillips had a warrant for his search of the Boolman car or the defendant's purse.

The United States Supreme Court has recognized an exception to the fourth amendment's warrant require-

ment, applicable where it is shown that there are exigent circumstances excusing the need to obtain the warrant. However, the police must still have probable cause to undertake the search. (See, *e.g.*, *Mincey v. Arizona* (1978), 437 U.S. 385, 392-93, 57 L. Ed. 2d 290, 299-300, 98 S. Ct. 2408, 2413.) In the present case, there is no argument that exigent circumstances existed or justified the warrantless search undertaken by Officer Phillips. The State attempts to justify the search of the defendant's purse by relying upon another exception to the fourth amendment warrant requirement that has been recognized by United States Supreme Court precedent: the "automobile exception." However, that exception does not apply, and is inapposite, to the present cause.

Under the automobile exception, law enforcement officers may undertake a warrantless search of a vehicle if there is probable cause to believe that the automobile contains evidence of criminal activity that the officers are entitled to seize. (See, *e.g.*, *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280.) Thus, in *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157, and in *California v. Acevedo* (1991), 500 U.S. 565, 114 L. Ed. 2d 619, 111 S. Ct. 1982, the Supreme Court held that, under the automobile exception, police officers may undertake a warrantless search of a closed container found in a vehicle when the officers have probable cause to believe that evidence of criminal activity will be found in the container.

The State relies upon the view expressed by the Court in *Ross*, and echoed in *Acevedo*, that "the expectation of privacy in one's vehicle is equal to one's expectation of privacy in the [closed] container, and *** 'the privacy interests in a car's trunk or glove compartment may be no less than those in a movable container.' [Citation.]" (*Acevedo*, 500 U.S. at 573, 114 L. Ed. 2d at

629-30, 111 S. Ct. at 1987-88, quoting *Ross*, 456 U.S. at 823, 72 L. Ed. 2d at 593, 102 S. Ct. at 2172.) The focus of the Court's analysis, in both *Ross* and *Acevedo*, was whether law enforcement officers were required to have probable cause in order to search a closed container being carried in an automobile. The Court decided that officers may conduct a warrantless search of an automobile, as well as closed containers in the vehicle, "where [the officers] have probable cause to believe contraband or evidence is contained." (*Acevedo*, 500 U.S. at 580, 114 L. Ed. 2d at 634, 111 S. Ct. at 1991.) In the case at bar, the State does not suggest that Officer Phillips had probable cause to believe that evidence of a crime would be found in either the Boolman vehicle or defendant's purse. In addition, there is nothing in the record to demonstrate that the police had such probable cause. Officer Phillips never testified that he believed that he had probable cause to search the car or the purse. Neither *Ross*, *Acevedo*, nor the "automobile exception" provides support for the State's position.

The record offers only one reason for Officer Phillips' search of Boolman's vehicle: he undertook his search of the automobile because Boolman consented to this search. Therefore, if Officer Phillips' search of defendant's purse is to be justified under fourth amendment principles, the State must find refuge in Boolman's *consent* to the officer's search of the vehicle.

On the issue of consent, the State seeks to justify the officer's search of defendant's purse in light of the United States Supreme Court's decision in *Florida v. Jimeno* (1991), 500 U.S. 248, 114 L. Ed. 2d 297, 111 S. Ct. 1801. In *Jimeno*, a police officer stopped the vehicle which defendant was driving because of a traffic offense. The officer asked to search defendant's automobile for narcotics and the defendant consented. During the search, the officer saw a folded, brown bag on the floor

of the vehicle. The officer opened the bag and found cocaine.

The Supreme Court determined that the officer's search of the brown paper bag was authorized by the defendant's consent to a search of the vehicle. The Court reasoned that the "standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect? [Citations.]" (*Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 302, 111 S. Ct. at 1803-04.) The Court framed the question before it as "whether it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car." (*Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 302-03, 111 S. Ct. at 1804.) The Court noted that the parameters of a search are usually defined by the purpose of the search. The Court reasoned that "it was objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs." (*Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 303, 111 S. Ct. at 1804.) On this basis, the Court found that the consent to search "extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor." *Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 303, 111 S. Ct. at 1804.

The State argues that the Court's ruling in *Jimeno* shows that the officers in the instant case were justified in searching the purse found in Boolman's car. We disagree, because we find that *Jimeno* is significantly different from the present case.

The defendant in *Jimeno* was the driver of the vehicle. In his capacity as driver, the defendant had the authority to consent to a search of the car, because he

had immediate possession and control of the entire vehicle. (See *People v. Harris* (1990), 199 Ill. App. 3d 1008, 1013 (citing *United States v. Morales* (3d Cir. 1988), 861 F.2d 396, 399, and 3 W. LaFave, Search & Seizure § 8.6(a), at 316 (2d ed. 1987)); see also *People v. Kelk* (1992), 231 Ill. App. 3d 797.) There was no question in *Jimeno* that the driver also had possession and control over the brown paper bag, and that he therefore had the authority to permit the police to search the bag. Although there was a passenger in *Jimeno*, there was no argument that the brown bag belonged to the passenger rather than the defendant driver. The question in *Jimeno* was whether the defendant, *having the authority* to consent to a search of both the vehicle and the paper bag, *intended* his consent to a search of the vehicle to also encompass a search of the paper bag. (See also *Kelk*, 231 Ill. App. 3d 797.) In the instant case, in contrast, Boolman did not own defendant's purse, nor is there any suggestion that she had common possession or control of the defendant's purse. Since Boolman did not own or share control of the purse, the precise question addressed in *Jimeno* is not presented in the case now before us.

Our conclusion in this respect also finds support in the decision of the Federal court of appeals in *United States v. Welch* (9th Cir. 1993), 4 F.3d 761. In that case, the driver of a car consented to a police search of his vehicle. During this search, the officers also found and looked into the purse of the defendant's companion, which had been left in the automobile. The court determined that *Jimeno* did not resolve the question of whether the officers' search of the purse was justified. The *Welch* court's reasoning is applicable to the present cause. As in *Welch*, the "dispositive issue *** is not what areas of the car [Boolman] may have intended [her] consent to encompass, whether or not [she] intended to

authorize a search of any of the car's contents, or even what constitutes an objectively reasonable interpretation of [her] statements to the officers." (*Welch*, 4 F.3d at 764.) "Rather the issue is whether [Boolman] had the [apparent] *authority* \*\*\* to give effective consent to the search of [her] companion's purse." (Emphasis in original.) *Welch*, 4 F.3d at 764.

The "apparent authority" rule was recognized and adopted by the United States Supreme Court in *Illinois v. Rodriguez* (1990), 497 U.S. 177, 111 L. Ed. 2d 148, 110 S. Ct. 2793. In that case, the defendant's girlfriend consented to police officers' entrance into the defendant's apartment. Once they had gained entry, the authorities saw drug paraphernalia as well as containers filled with a substance later determined to be cocaine. The defendant was arrested and charged with possession of a controlled substance with the intent to deliver. He filed a motion to suppress the evidence seized from the apartment, arguing that his girlfriend lacked the actual authority to consent to police entry into the residence.

The United States Supreme Court held that the girlfriend lacked the actual authority to allow the police to enter the apartment, since she no longer lived in the apartment and had no legal interest in the premises. (*Rodriguez*, 497 U.S. at 181-82, 111 L. Ed. 2d at 156-57, 110 S. Ct. at 2797-98.) However, the Court accepted the State's argument that the officers' entry was nevertheless valid, because the officers *reasonably believed* that the girlfriend had the authority to allow them to enter the apartment. The Court stated that "in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government \*\*\* is not that they always be correct, but that they always be reasonable." *Rodriguez*, 497 U.S. at 185, 111 L. Ed. 2d at 159, 110 S. Ct. at 2800.

In reaching this conclusion, the Court cautioned that law enforcement officers may not blindly accept a person's consent to search property or premises. "Even when the invitation [to search] is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." (*Rodriguez*, 497 U.S. at 188, 111 L. Ed. 2d at 161, 110 S. Ct. at 2801.) The Court emphasized that "determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment ... "warrant a man of reasonable caution in the belief" ' that the consenting party had authority over the premises?" (*Rodriguez*, 497 U.S. at 188, 111 L. Ed. 2d at 161, 110 S. Ct. at 2801, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) If the facts and circumstances are such that it would be objectively reasonable to conclude that the person who consented did not have authority to do so, then the police officers' subsequent search would be invalid. (*Rodriguez*, 497 U.S. at 188-89, 111 L. Ed. 2d at 161, 110 S. Ct. at 2801.) The State bears the burden of proving that the officers were objectively reasonable in their belief that the person who gave consent to the search had the authority to do so. See *Rodriguez*, 497 U.S. at 181, 111 L. Ed. 2d at 156, 110 S. Ct. at 2797.

Consistent with *Rodriguez*, decisions from other jurisdictions have generally held that a driver's consent to a search of the vehicle does not extend to an item remaining in the car that belongs exclusively to a passenger of the vehicle. *United States v. Welch* (9th Cir. 1993), 4 F.3d 761 (passenger's consent to search of car did not permit search of companion's purse); *People v. Suazo* (1993), 133 N.J. 315, 627 A.2d 1074 (driver had no authority to consent to search of passenger's luggage;

officers' belief that driver could validly consent to search held unreasonable); *State v. Williams* (1980), 48 Or. App. 293, 616 P.2d 1178 (vehicle owner's consent to search of vehicle held not reasonably construed as permission for search of closed and latched stereo cassette tape case that belonged to passenger); *State v. Zachodni* (S.D. 1991), 466 N.W.2d 624 (driver's consent to search of vehicle not reasonably construed as permission to search wife's purse, who was passenger in vehicle); *May v. State* (Tex. App. 1979), 582 S.W.2d 848 (passenger's consent to search of vehicle did not justify police search of lunch box that driver said was his); see also *People v. McMillan* (Colo. App. 1993), 870 P.2d 493 (officers' probable cause to search vehicle based on arrest of driver did not provide probable cause to search passenger's purse); see generally Annot., 31 A.L.R.3d 1078 (1970).

Applying this jurisprudence to the present case, we conclude that Officer Phillips should have ascertained who owned the purse he found in the Boolman vehicle before he opened and searched the contents of the purse. In our view, it would have been objectively reasonable for the law enforcement officer to realize that the purse might belong to one of the passengers rather than to Boolman. A purse is normally carried by a woman, and all of the adult occupants of the vehicle were women. Thus, the purse could logically have belonged to any one of the three adult women in the car. The purse was found on a passenger seat in the car, not on the driver's seat, thereby tending to the conclusion that the purse belonged to the passenger, not the driver. It would have been unreasonable for the officer to believe that Boolman shared some common use in the purse with one of the passengers in the vehicle, since a purse is generally not an object for which two or more persons share common use and authority.

Also, it is uncontradicted that defendant did not

know that Boolman had given her consent to a search of the vehicle. It is also unrebutted that defendant did not know the police officers' purpose for the search, and that defendant was not aware that she was being asked to exit the vehicle so that the officers could search the automobile. Under these circumstances, the defendant did not abandon her purse in the vehicle, nor did she assume the risk that someone might look into her purse if she left it in the car.

Given all of these considerations, we conclude that Officer Phillips' actions were not objectively reasonable and that his search of defendant's purse was therefore invalid.

By our holding we emphasize that the apparent authority rule does not allow law enforcement officers to "proceed without inquiry in ambiguous circumstances or always accept at face value the consenting party's apparent assumption that he has authority to allow the contemplated search." (3 W. LaFave, Search & Seizure § 8.3(g), at 266 (2d ed. 1987).) One commentator has succinctly remarked:

> "[U]nder a sound application of the apparent authority rule the police must be required to make reasonable inquiries when they find themselves in ambiguous circumstances. This does not mean that the police must contest every claim of authority ***. But sometimes the facts known by the police cry out for further inquiry, and when this is the case it is not reasonable for the police to proceed on the theory that 'ignorance is bliss.' " 3 W. LaFave, Search & Seizure § 8.3(g), at 266-67 (2d ed. 1987).

Similarly, the officer in the present case acted unreasonably when he proceeded to search the closed purse, although he was ignorant of the identity of the owner of the purse. The State suggests that Officer Phillips was mistaken and incorrectly believed that Boolman did in fact own the purse. There is nothing in the record to support this contention, however. Officer Phillips did not testify that he mistakenly believed that Boolman

owned the purse he found on the front passenger seat of the car. The officer simply testified that he asked the occupants to step out of the car, but never told them he was going to search it. Under these circumstances, it is likely that the officer simply did not know who owned the purse, and that he did not believe that he needed to find out. In our view, such police action is not reasonable under the Supreme Court's interpretation of the fourth amendment to the United States Constitution.

The appellate court found that further inquiry by Officer Phillips would not have been advisable because it would have been difficult for him to determine who owned the various pieces of property in the vehicle. (242 Ill. App. 3d at 676.) The court also suggested that when a search is undertaken, "such split-second decisions are likely given little thought." 242 Ill. App. 3d at 676.

Similar sentiments have been expressed in decisions from other courts regarding the apparent authority rule. We would agree that the apparent authority doctrine should not be applied so strictly that it becomes "unworkable and place[s] too heavy a burden on the police." (*United States v. Poole* (E.D. La. 1969), 307 F. Supp. 1185, 1190.) Also, the emergency nature of the circumstances confronting the police in various situations may not permit protracted investigation into the true ownership or authority over the property or premises which the police have been given the permission to search. (See, *e.g.*, *People v. Adams* (1981), 53 N.Y.2d 1, 422 N.E.2d 537, 439 N.Y.S.2d 877.) Consent searches provide a valuable investigative tool for law enforcement authorities, by providing a lawful avenue for the officers to exonerate the innocent and focus their efforts on others who are more likely to be guilty of criminal activity.

However, neither police convenience nor the exigencies of the moment justified the officer's failure to ask

Boolman in the present case if the purse belonged to her or to one of her passengers. This would not have been a cumbersome, time-consuming or complicated undertaking in the instant case. Also, there was no emergency nature to the officer's search, since the occupants of the vehicle were being detained by the officers, and there was no likelihood that the evidence of narcotics, if it were present, would be destroyed or hidden by Boolman or her passengers. There was no immediate threat that the evidence or the occupants would be affected by the short time it would have taken for the officer to simply inquire regarding ownership of the purse. As the Illinois State Bar Association aptly observes, the time that would be required to ask which passenger owned the purse "does not seem an onerous burden nor one which would place the officers in danger."

Based upon our review of the record and the pertinent precedent, we find no manifest error in the trial court's determination that Officer Phillips' search of the defendant's purse was not objectively reasonable. At no time did the defendant abandon her possessory interest in or control over her purse. The purse was closed when she left it on the passenger seat of the vehicle, where she had been riding, and she had a legitimate expectation of privacy in the contents of her purse. Accordingly, we affirm the trial court's allowance of the defendant's motion to suppress. We reverse the appellate court's decision that the trial court's ruling was in error.

We decline to consider the State's invitation that this court adopt the apparent authority rule as a matter of substantive Illinois constitutional law, pursuant to our State constitutional provision that bars unreasonable searches and seizures. (Ill. Const. 1970, art. I, § 6.) This argument is waived, inasmuch as it was never pre-

sented to the trial court or the appellate court upon review. Also, we note that the cases upon which the State relies do not address the apparent authority rule in the context of our State constitutional provision, but rather analyzed and applied Federal fourth amendment jurisprudence regarding unreasonable searches and seizures. (See *People v. Miller* (1968), 40 Ill. 2d 154, 157; *People v. Harris* (1990), 199 Ill. App. 3d 1008, 1013; *People v. Speer* (1989), 184 Ill. App. 3d 730, 737; *People v. Vought* (1988), 174 Ill. App. 3d 563, 570; *People v. Bochniak* (1981), 93 Ill. App. 3d 575, 577.) Subsequent to those decisions, the United States Supreme Court adopted the apparent authority rule (*Rodriguez*, 497 U.S. 177, 111 L. Ed. 2d 148, 110 S. Ct. 2793), which this court has since applied to fourth amendment issues (see *People v. Henderson* (1990), 142 Ill. 2d 258, 299 ("[w]e now hold that, when a court is deciding whether consent was given \*\*\*, the circumstances must have been such that the police could have reasonably believed they had been given consent to enter [citation]"); see also *People v. Steinberg* (1994), 260 Ill. App. 3d 653, 658 (applying *Rodriguez* apparent authority rule)).

We need not and do not decide whether the apparent authority rule has not been, but should be, adopted as an element of our State constitutional jurisprudence prohibiting unreasonable searches and seizures. As stated more fully above, the apparent authority rule does not justify the officers' conduct in the present cause. As a result, our recognition of the rule as an element of Illinois constitutional law would not alter our conclusion that the trial court's decision was correct, and that the disposition of the appellate court should be reversed.

For the reasons stated, judgment of the appellate court is reversed and the judgment of the circuit court

is affirmed. The cause is remanded to the circuit court for further proceedings consistent herewith.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*

JUSTICE HEIPLE, dissenting:

I dissent for the reasons adequately expressed in the majority opinion of the appellate court which this court now reverses. 242 Ill. App. 3d 675.